COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-05-424-CV

 

 

JAMES HURLEY                                                                  APPELLANT

 

                                                   V.

 

TARRANT COUNTY AND JACK ALLEN,                                    APPELLEES

IN
HIS OFFICIAL CAPACITY

 

                                              ------------

 

            FROM
THE 96TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

This is a an appeal from a
summary judgment in a whistleblower case. 
The trial court granted summary judgment in favor of Appellees Tarrant
County and Constable Jack Allen on Appellant James Hurley=s wrongful-termination claim, and Hurley appealed.  We affirm.

 

 

 








I.      Background

Hurley is a certified peace
office with approximately thirty years= experience with various law enforcement agencies.  In 1997, he went to work as a deputy
constable for Tarrant County Constable Jack Allen. 

In February 1998, 1999, and
2000, Hurley received high job-performance scores from Chief Deputy Constable
Ronnie Thompson:  4.83 out of a possible
5.00 points in 1998, 4.9 in 1999, and 4.9 in 2000.  In 2001, his score fell to 3.94.  The December 2001 performance review noted
that Hurley needed to improve his Astress managementCtemper control.@   

On October 12, 2001, Allen
gave Hurley a written ANotice of
Disciplinary Action And Termination Warning.@  The warning recounted a
September 2001 episode when Hurley lost his temper and shouted insults at Allen
while speaking with him outside Allen=s home when Hurley was on duty. 
The notice cited Hurley for insubordination and conduct unbecoming an
officer, recounted several other instances of unprofessional conduct on Hurley=s part, and suspended him for three days without pay.  Allen advised Hurley in the notice, AJim, you have got to take control of your temper and exhibit a
professional attitude. . . . If you have [a]
further temperamental outburst, you are warned that you may be subjected to
further forms of discipline up to and including termination.@ [Emphasis in original.] 








On October 4, 2002, Allen
terminated Hurley=s
employment.  In the written termination
notice, Allen recited as grounds for termination several instances of alleged
misconduct by Hurley in the course of performing his job duties including,
among others:

$                  
the incident that led to the October 2001
warning;

 

$                  
an incident in September 2002 when Hurley served
a writ of sequestration and allegedly threatened to rip a door off its hinges
to gain access to the subject property;

 

$                  
an incident in May 2002 when Hurley served a writ
of execution and allegedly threatened to put his foot through the property
owner=s
front door and Aauction
off everything in her home@; and

 

$                  
an incident in September 2002 when Hurley
executed a capias warrant after Allen specifically ordered Hurley not to
involve himself in the execution of that warrant.

 

Hurley appealed to the Tarrant County Civil
Service Commission, and the Commission unanimously upheld his termination.  








Hurley sued Tarrant County
and Allen[1]
for retaliatory discharge under the Texas Whistleblower Act[2]
and 42 U.S.C.A. ' 1983.  He contends that Allen fired him not for the
reasons stated in the termination notice but in retaliation for reporting two
violations of law allegedly committed by Allen. 
First, Hurley alleged that in June 2001, while he and Allen were serving
a writ of execution on a business, Allen removed a box of t-shirts from the
business=s premises.  Hurley alleged that
he reasonably believed Allen committed theft when he took the shirts, and he
reported Allen=s actions to
Chief Deputy Constable Ronnie Thomson. 
Thompson reported Hurley=s allegations back to Allen. 

Second, Hurley alleged that
in April 2002, he observed Allen engage in Aelectioneering@ by speaking
to an unidentified person at an early-voting site.  Again, Hurley reported Allen=s actions to Thompson, and again, Thompson reported Hurley=s allegations back to Allen. 

Allen and the County filed a
combined no evidence and traditional motion for summary judgment.  The trial court granted summary judgment in
favor of Allen and the County, and Hurley filed this appeal. 

II.     Standard of Review

When a party moves for
summary judgment under both rules 166a(c) and 166a(i), we will first review the
trial court=s judgment
under the standards of rule 166a(i).  Tex. R. Civ. P. 166a(c), (i); Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).  If the appellant failed to produce more than
a scintilla of evidence under that burden, then there is no need to analyze
whether appellees= summary
judgment proof satisfied the less stringent rule 166a(c) burden.  Ridgway, 135 S.W.3d at 600.








After an adequate time for
discovery, the party without the burden of proof may, without presenting
evidence, move for summary judgment on the ground that there is no evidence to
support an essential element of the nonmovant=s claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence. 
Id.; Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 207
(Tex. 2002).  The trial court must grant
the motion unless the nonmovant produces summary judgment evidence that raises
a genuine issue of material fact.  See
Tex. R. Civ. P. 166a(i) &
cmt.; Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).

When reviewing a no evidence
summary judgment, we examine the entire record in the light most favorable to
the nonmovant, indulging every reasonable inference and resolving any doubts
against the motion.  Sudan v. Sudan,  199 S.W.3d 291, 292 (Tex. 2006).  If the nonmovant brings forward more than a
scintilla of probative evidence that raises a genuine issue of material fact,
then a no evidence summary judgment is not proper.  Moore v. K Mart Corp., 981 S.W.2d 266,
269 (Tex. App.CSan Antonio
1998, pet. denied). 

Under rule 166a(c), a
defendant who conclusively negates at least one essential element of a cause of
action is entitled to summary judgment on that claim.  IHS Cedars Treatment Ctr. of Desoto, Tex.,
Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004); see Tex. R. Civ. P. 166a(b), (c).  When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s favor.  IHS Cedars
Treatment Ctr., 143 S.W.3d at 798. 








III.     Whistleblower Claim

In his first issue, Hurley
argues that the trial court erred by granting summary judgment on his
whistleblower claim.

The Whistleblower Act
prohibits the suspension or termination of Aa public employee who in good faith reports a violation of law by the
employing governmental entity or another public employee to an appropriate law
enforcement authority.@  Tex.
Gov=t Code Ann. ' 554.002.  A public
employee who sues under the Whistleblower Act has the burden of proof.  Id. ' 554.004(a).  The employee
must demonstrate all elements of the action, including causation, by a
preponderance of the evidence.  City
of Fort Worth v. Zimlich, 29 S.W.3d 62, 67 (Tex. 2000).[3]








To show causation, a public
employee must demonstrate that after he reported a violation of the law in good
faith to an appropriate law enforcement authority, the employee suffered
discriminatory conduct by his employer that would not have occurred when it did
if the employee had not reported the illegal conduct.  Id. (citing Tex. Dep=t of Human Servs. v. Hinds, 904 S.W.2d
629, 633 (Tex. 1995)). This causation standard has been described as a Abut for@ causal
nexus requirement.  Rogers v. City of
Fort Worth, 89 S.W.3d 265, 280 (Tex. App.CFort Worth 2002, no pet.)  An
employee need not prove that his reporting of the illegal conduct was the sole
reason for the employer=s adverse
action.  Hinds, 904 S.W.2d at 636;
Rogers, 89 S.W.3d at 280.  

Circumstantial evidence may
be sufficient to establish a causal link between the adverse employment action
and the reporting of illegal conduct.  Zimlich,
29 S.W.3d at 69; Harris County v. Vengallo, 181 S.W.3d 17, 25 (Tex. App.CHouston [14th Dist.] 2005, pet. denied); Rogers, 89 S.W.3d at
280.  Circumstantial evidence in this
type of case includes the following:

(1)    knowledge of the report of illegal conduct;

(2)    expression of a negative attitude toward the employee=s
report of the illegal conduct;

(3)    failure to adhere to established company policies regarding
employment decisions,

(4)    discriminatory treatment in comparison to similarly situated
employees; and

(5)    evidence that the stated reason for the adverse employment action
is false.

 

Zimlich, 29
S.W.3d at 69; Vengallo, 181 S.W.3d at 25; Rogers, 89 S.W.3d at
280.  ABut evidence that an adverse employment action was preceded by a
superior=s negative attitude toward an employee=s report of illegal conduct is not enough, standing alone, to show a
causal connection between the two events. There must be more.@  Zimlich, 29 S.W.3d at
69. 








Allen and the County
challenged the causation element of Hurley=s whistleblower claim in the no evidence portion of their motion for
summary judgment.  On appeal, Hurley
argues that he presented some circumstantial evidence of causation under the
first and second Zimlich elements. 

First, Hurley points to Chief
Deputy Ronnie Thompson=s testimony
as evidence that Allen knew Hurley had reported his alleged illegal
conduct.  Thompson testified that Hurley
complained to him that Allen had taken a box of t-shirts from the premises of a
business where Hurley was executing a judgment and that Thompson told Allen about
Hurley=s allegation.  This is some
evidence that Allen knew of Hurley=s report about the alleged theft of the t-shirts.  But Thompson testified that he could not
remember Hurley reporting Allen=s alleged electioneering to him. 
Instead, he testified that he personally saw Allen standing next to a
voter at a voting booth and cautioned Allen about speaking to voters in the
voting area of the polling place.  Thus,
Thompson=s testimony is no evidence that Allen knew of Hurley=s electioneering report.








Second, Hurley points to the
contrast between the positive job evaluations and commendations he received
before he reported Allen=s alleged
illegal conduct with the reprimands he received after he made his reports as
evidence of Allen=s expression
of a negative attitude toward Hurley=s reports.  In February 1998,
Chief Deputy Thompson gave Hurley an annual job-performance rating of 4.83 out
of a possible 5.00 points.  He gave
Hurley ratings of 4.9 in December 1999 and December 2000, but a rating of 3.94
in December 2001Cafter Hurley
reported the alleged t-shirt theft.  The
December 2001 performance review noted that Hurley needed to improve his Astress managementCtemper control.@

As further evidence of Allen=s expression of a negative attitude toward his reports, Hurley points
to the testimony of Deputy Constable Fred Rogers.  Rogers testified that he overheard Allen say
he Ahad a cancer in his office and was going to cut that cancer out@ sometime in 2002.  Rogers
thought Allen was talking about Hurley, but he admitted Allen did not mention
Hurley=s name and his conclusion that Allen was speaking of Hurley was mere
speculation. Speculation is not evidence. 
Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 164 (Tex.
2004).  Thus, there is no evidence that
Allen was speaking of Hurley, and Rogers=s testimony is no evidence of Allen=s expression of a negative attitude toward Hurley=s reports.

In summary, Hurley presented
some evidence that Allen knew of his report to Thompson of the alleged t-shirt
theft and some evidence that his job performance evaluations declined after he
made his reports.  This is some evidence
of the first and second factors of the Zimlich circumstantial evidence
test.








But that evidence, standing alone,
is not enough to raise a genuine issue of material fact on causation.  As we noted above, the supreme court stated
in Zimlich that Aevidence
that an adverse employment action was preceded by a superior=s negative attitude toward an employee=s report of illegal conduct is not enough, standing alone, to show a
causal connection between the two events. There must be more.@  Zimlich, 29 S.W.3d at
69.  Evidence of a supervisor=s negative attitude toward an employee=s report of illegal conduct presupposes the supervisor=s knowledge of the report; thus, the second Zimlich factor
presupposes and subsumes the first.  If
evidence of a superior=s negative
attitude toward an employee=s report is not enough to raise a fact issue on causation, then that
evidence coupled with evidence that the supervisor knew about the report is not
enough, either.

Here, Hurley presented some
evidence of the first and second Zimlich factors only.  We hold that his summary judgment evidence
did not raise a fact issue on the question of causation.  Therefore, the trial court did not err by
granting Allen and the County=s motion for summary judgment with regard to Hurley=s whistleblower claim, and we overrule Appellant=s first issue.

IV.    Civil Rights Claim

In his second issue, Hurley
argues that the trial court erred by granting summary judgment on his civil
rights claim.  Hurley alleged that Allen
and the County violated his First Amendment right to free speech, for which he
sued them under 42 U.S.C.A. ' 1983.  Allen and the County
moved for summary judgment on the ground that there was no evidence of a
custom, policy, or procedure that would support a cause of action under section
1983. 








Section 1983 creates a cause
of action for persons deprived of constitutional rights under color of
law.  42 U.S.C.A. ' 1983 (West 2007).[4]  Section 1983 does not provide for vicarious
or respondeat superior liability. Pineda v. City of Houston, 291 F.3d
325, 328 (5th Cir. 2002), cert. denied, 537 U.S. 1110 (2003).  When suing a municipality under ' 1983, a plaintiff must allege an adequate nexus between the
unconstitutional act and the municipality; that is, the plaintiff must allege A(1) a policy maker; (2) an official policy; and (3) a violation of
constitutional rights whose >moving force= is the
policy or custom.@  Piotrowski v. Houston, 237 F.3d 567,
578 (5th Cir.), cert. denied, 534 U.S. 820 (2001) (citing the seminal
case Monell v. Dept. of Social Serv.=s, 436 U.S. 658, 694, 98 S. Ct. 2018, 2038
(1978)).








The second prong of the
adequate-nexus test requires proof of an Aofficial policy,@ and usually
plaintiffs attempt to show the requisite policy by demonstrating a Acustom which, even if not formally approved by an appropriate decision
maker, may fairly subject a municipality to liability on the theory that the
relevant practice is so widespread as to have the force of law.@  Bd. of County Comm=rs of Bryan County v. Brown, 520 U.S.
397, 404, 117 S. Ct. 1382, 1388 (1997). 
In this case, Hurley=s basis for municipal liability is one which is less frequently
invoked, but just as clearly established in civil rights case law: a plaintiff
can establish a Apolicy@ for Monell purposes by pointing to a Adecision to adopt [a] particular course of action [if] properly made
by [a municipality=s]
authorized decision makers.@  Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S. Ct. 1292, 1299 (1986).  When a decision maker possesses final
policymaking authority regarding the action, Aa single action . . . constitutes the official policy of the
municipality.@  Bd. of County Comm=rs of Bryan County, 520 U.S. at 404, 177
S. Ct. at 1388.  Whether a government
decision maker has final policymaking authority is a question of law.  Pembaur, 475 U.S. at 483, 106 S. Ct.
at 1299-1300; Denton, 136 F.3d at 1044.








Ratification of an officer=s decision by a policymaker with final decision-making authority may
constitute the official policy of the municipality:  A[W]hen a subordinate=s decision is subject to review by the municipality=s authorized policymakers, [the authorized policymakers] have retained
the authority to measure the official=s conduct for conformance with their policies.  If the authorized policymakers approve a
subordinate=s decision and
the basis for it, their ratification would be chargeable to the
municipality because their decision is final.@  City of St. Louis v.
Praprotnik,  485 U.S. 112, 127, 108
S. Ct. 915, 926 (1988) (emphasis added). 
Identifying a Apolicy@ ensures that a municipality is held liable only for those
deprivations resulting from the decisions of its duly constituted legislative
body.  Bd. of County Comm=rs of Bryan County, 520 U.S. at 404, 177
S. Ct. at 1388 (citing Monell, 436 U.S. at 694, 98 S. Ct. at 2027).  AThat a plaintiff has suffered the deprivation of federal rights at the
hands of a municipal employee will not alone permit an inference of municipal
culpability and causation; the plaintiff will simply have shown that the employee
acted culpably.@  Id. at 406-07, 177 S. Ct. at 1389. 








Hurley argues that the
Tarrant County Civil Service Commission has final policymaking authority with
regard to the termination of deputy constables. 
We agree.  Tarrant County deputy
constables are subject to and protected by the County=s civil service system.  See Tex. Loc. Gov=t Code Ann. ' 158.001(2)
(Vernon 1999); see also County of Dallas v. Wiland, 216 S.W.3d 344, 348,
n.14 (Tex. 2007) (noting that legislature amended ' 158.001(2) in 1989 for the express purpose of allowing counties
to include deputy constables within their civil service systems).  Under local government code ' 158.012, a county civil service commission has final authority
within a county over the decision to demote, suspend, or terminate a county
employee:  AA county employee who, on a final decision by [a county civil service]
commission, is demoted, suspended, or removed from the employee=s position may appeal the decision only by filing a petition in a
district court.@  Tex.
Loc. Gov=t Code Ann. ' 158.012 (Vernon 2005).  No
other county official or body has authority over the commission=s employment decisions.  As
such, the Tarrant County Civil Service Commission had final policymaking
authority over Hurley=s
termination.

But while the parties agree
that the Commission upheld Allen=s termination of Hurley, Hurley presented no summary judgment evidence
that the Commission approved the alleged unconstitutional basis for
Allen=s decision.  See Praprotnik,
485 U.S. at 127, 108 S. Ct. at 926. 
Hurley attached three volumes of testimony from his hearing before the
Commission.  At no time during the
hearing did Hurley inform the Commission, either through evidence or argument,
about the t-shirt and electioneering incidents or his claim that Allen
terminated him for reporting those incidents to Thompson in violation of Hurley=s right to free speech. 
Instead, the evidence presented to the Commission concerned the
incidents described in Hurley=s termination letter.








 In this case, although Hurley presented some
evidence that he suffered a deprivation of federal rights at the hands of
Allen, he presented no evidence that will permit an inference of municipal
culpability.  See Bd. of County Comm=rs of Bryan County, 520 U.S. at
406-07, 177 S. Ct. at 1389.  To hold the
County liable for Allen=s actions
under these circumstances would blur, if not erase, the line between vicarious
liability and section 1983 liability drawn by the Supreme Court in Monell.  See Monell, 436 U.S. at 694‑95,
98 S. Ct. at 2037‑38.  Therefore, we hold the trial court did not err
by granting summary judgment on Hurley=s section 1983 claim on the ground that there is no evidence of a
custom, policy, or procedure that would support such a claim.  We overrule his second issue.

                                             Conclusion

Having overruled both of
Hurley=s issues, we affirm the trial court=s judgment.

 

 

ANNE GARDNER

JUSTICE

 

PANEL B:   CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

 

DELIVERED:  August 2, 2007











[1]Hurley
sued Allen in his individual and official capacities but later nonsuited his
claims against Allen in his individual capacity. 





[2]Tex. Gov=t Code Ann. ' 554.001-.010 (Vernon
2004).





[3]If
the adverse employment action made the basis of the suit occurred with ninety
days of the date when the employee reported illegal conduct, the Act creates a
rebuttable presumption that the adverse action was caused by the employee=s
report.  Tex. Gov=t Code Ann. ' 554.004(a).  The presumption does not apply here because
Allen terminated Hurley more than ninety days after Hurley reported Allen=s
allegedly illegal conduct.





[4]Section
1983 provides,

 

Every
person who, under color of any statute, ordinance, regulation, custom, or
usage, of any State or Territory or the District of Columbia, subjects, or
causes to be subjected, any citizen of the United States or other person within
the jurisdiction thereof to the deprivation of any rights, privileges, or
immunities secured by the Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or other proper proceeding for
redress.