# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00636-CV

**R & R Resources Corporation and Jay Brown, Appellants**

**v.**

**Echelon Oil and Gas, L.L.C.; Tex-El Oil and Gas, Inc.; and
BairTex Energy, Inc., Appellees**

### FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT
### NO. 2005V-107, HONORABLE DAN R. BECK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellees Echelon Oil and Gas, L.L.C., Tex-El Oil and Gas, Inc., and BairTex Energy, Inc., working interest owners in three oil and gas wells, sued the well operator, appellant R&R Resources Corporation, for breach of contract, statutory theft, fraud, and declaratory and injunctive relief. R&R Resources counterclaimed for breach of contract. The jury found in favor of appellees and awarded damages. The district court rendered judgment on the jury verdict, ordered that R&R Resources pay the damages awarded by the jury, awarded appellees attorneys' fees, and granted appellees' requested declaratory and injunctive relief. The district court also rendered a take-nothing judgment on R&R Resources' claims.

We reverse the district court's judgment awarding appellees damages for breach of contract and statutory theft and render judgment that appellees take nothing on those claims. We affirm the district court's judgment on appellees' fraud claim and its award of damages to appellees

based on that claim. We also affirm the district court's take-nothing judgment on R&R Resources' counterclaim for breach of contract. We modify the award of attorneys' fees to appellees in the event R&R Resources appeals to the Texas Supreme Court such that the award is made contingent on R&R Resources' appeal being unsuccessful, and we affirm the district court's judgment awarding attorneys' fees as modified.

### Factual and Procedural Background

Appellees Echelon, Tex-El, and BairTex are in the business of purchasing and selling working interests in oil and gas properties. Beginning in 2002, appellees, along with their investors, collectively obtained a majority of the working interests in three wells located in Fayette County—the Ullrich, Goebel Brothers, and Toennis wells.[1] The wells were operated by appellant R&R Resources, which is also in the business of purchasing and selling working interests in oil and gas properties. R&R Resources also obtained its own working interest in each of the three wells.

Under each joint operating agreement ("JOA") applicable to the three wells,[2] R&R Resources was responsible for mechanical operation of the wells, in addition to administering and handling the capital funds, sending the working interest owners monthly joint interest billing statements ("JIBs") for routine operations, paying expenses, and distributing production revenue. Each of the working interest owners was responsible for paying its proportionate share of the costs incurred for drilling projects and routine operations. The JOAs also provided that R&R Resources

---

[1] BairTex had no involvement or ownership interest in the Toennis well.

[2] The Toennis JOA was not in evidence at trial, but the parties stipulated that for purposes of this suit, the terms of the Toennis JOA were identical to the terms of the Ullrich and Goebel JOAs.

was obligated to keep an accurate record of the joint accounts and to keep the "Contract Area" free from liens and encumbrances.

Roger Slayton, the president of Tex-El, began to suspect problems with R&R Resources' accounting and operations some time during 2003. Slayton requested an audit of operations on all three wells for the period beginning January 1, 2003. The audit included a review of bank statements, the monthly JIBs for each well, and the drilling and testing invoices for the Goebel and Ullrich wells. Based on the findings from the audit, appellees concluded that R&R Resources had failed to render a final accounting for the Ullrich well, refund overpayments on the Goebel well, perform or schedule required work on the Goebel well, timely remit monthly production proceeds, promptly pay third-party invoices for operating costs, maintain adequate working capital to meet obligations as operator, and maintain adequate accounting records and personnel to enable timely and correct reporting to the non-operators. Appellees also concluded that R&R Resources had used appellees' clients' funds—despite being provided for designated purposes—to pay its own obligations.

In light of the audit results, appellees voted to remove R&R Resources as operator for "good cause" pursuant to the JOAs.[3] In August 2004, appellees appointed Leexus Oil & Gas, L.L.P. to operate the three wells. However, Rick Doutel, the president of R&R Resources, communicated R&R Resources' refusal to relinquish its position as operator.

---

[3] Appellees had agreements with their investors giving them the authority to vote their investors' rights and utilize their percentages in the wells.

3

On May 18, 2005, appellees filed suit in district court against R&R Resources.[4]  In their pleadings, appellees sought (1) a declaratory judgment that R&R Resources' accounting and operating practices were in violation of the JOAs, these violations constituted good cause for R&R Resources' removal as operator, and removal of R&R Resources and appointment of Leexus as successor operator had been effectuated; (2) temporary and permanent injunctions against R&R Resources' interfering with, opposing, or preventing Leexus from operating the wells, and against its refusing to deliver to Leexus the necessary documentation to continue operating the leases;[5] and (3) damages for breach of contract, statutory theft, breach of fiduciary duty, and fraud.  R&R Resources counterclaimed for breach of contract, fraud, fraudulent inducement, and injunctive relief.

The case went to trial before a jury.  The jury found that R&R Resources breached the JOAs, unlawfully appropriated appellees' personal property, breached its fiduciary duty, committed fraud, and should not operate the three wells.  As to R&R Resources' counterclaims, the jury found that appellees did not breach the JOAs or commit fraud.  Damages were assessed against R&R Resources as follows:  $75,000 in "benefit of the bargain" damages for breach of the Ullrich JOA, $130,000 in "benefit of the bargain" damages for breach of the Goebel JOA, $50,000 for "loss of use of the appropriated personal property," $100,000 for fraud and/or breach of fiduciary duty,

[4]  Shortly before trial, appellant Jay Brown and several other working interest owners intervened as plaintiffs.  The other intervenors are not parties to this appeal.  Because their interests are aligned, we refer to R&R Resources and Brown collectively as "R&R Resources."

[5]  In July 2005, the district court granted part of appellees' requested temporary injunctive relief and directed R&R Resources to turn over operations on the Ullrich and Goebel wells.  R&R Resources filed an interlocutory appeal, and this Court affirmed.  *See R&R Res. Corp. v. Echelon Oil & Gas, L.L.C.*, No. 03-05-00479-CV, 2006 Tex. App. LEXIS 326 (Tex. App.—Austin Jan. 10, 2006, no pet.) (mem. op.).  R&R Resources turned over operations of the Ullrich and Goebel wells to Leexus in January 2006.

4

and attorneys' fees of $160,000 for preparation and trial, $35,000 for an appeal to the court of appeals, and $25,000 for an appeal to the Texas Supreme Court. On August 8, 2007, the district court rendered a final judgment on the jury's findings and granted declaratory and permanent injunctive relief in favor of appellees.[6]

R&R Resources appeals, presenting twenty-eight points of error. These points of error essentially reduce to seven issues: (1) the amount of damages awarded for breach of contract is excessive and not supported by legally and factually sufficient evidence; (2) appellees' statutory theft claim is not based on an independent injury, and the amount of damages awarded is excessive and not supported by legally and factually sufficient evidence; (3) the evidence is legally and factually insufficient to support the jury's finding of fraud, and the amount of damages awarded therefor is excessive and not supported by legally and factually sufficient evidence; (4) appellees' recovery of damages for breach of contract, fraud, and statutory theft violates the one-satisfaction rule; (5) the evidence shows, as a matter of law, that appellees breached the JOAs; (6) the district court erred in awarding appellees their attorneys' fees; and (7) the district court erred in refusing to rule on R&R Resources' post-judgment motions.

***Standard of Review***

R&R Resources challenges the legal and factual sufficiency of portions of the jury's verdict. In a legal sufficiency challenge, we review the evidence in the light most favorable to the judgment, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence

---

[6] R&R Resources has not appealed the finding of liability for breach of fiduciary duty or the district court's award of declaratory and injunctive relief.

5

unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). We will sustain a legal sufficiency challenge if the record reveals: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810. More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). Similarly, in reviewing the legal sufficiency of evidence to support a finding that had to be proven by clear and convincing evidence, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *See Southwestern Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). If, after conducting the review, we determine that no reasonable fact-finder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient. *See id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

For a factual sufficiency challenge, we must consider and weigh all the evidence in the record, both supporting and against the finding, to decide whether the finding should be set aside. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). In reviewing R&R Resources' factual sufficiency challenge, we will set aside the judgment only if the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.*; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Similarly, in reviewing the factual sufficiency of evidence to

6

support a finding that had to be proven by clear and convincing evidence, we give due consideration to evidence that the fact-finder could reasonably have found to be clear and convincing. *J.F.C.*, 96 S.W.3d at 266. The ultimate inquiry is whether a reasonable fact-finder could have resolved disputed evidence in favor of the finding. *Id.*

With respect to its counterclaim, R&R Resources presents a "conclusive evidence" point of error, attempting to overcome, as a matter of law, an adverse fact finding with respect to an issue on which it had the burden of proof. *See Stable Energy, L.P. v. Kachina Oil & Gas, Inc.*, 52 S.W.3d 327, 331 (Tex. App.—Austin 2001, no pet.). First, we examine the record for evidence that supports the jury's finding, while ignoring all evidence to the contrary. Second, if there is no evidence to support the fact-finder's answer, we examine the entire record to see if the contrary proposition is established as a matter of law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). A party establishes a proposition as a matter of law if reasonable minds would not differ in drawing the same conclusion. *Stable Energy*, 52 S.W.3d at 331.

We review a trial court's award of attorneys' fees for abuse of discretion. *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004). A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner, or when it acts without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

***Breach of Contract***

The jury awarded appellees $75,000 for R&R Resources' breach of the Ullrich JOA and $130,000 for its breach of the Goebel JOA. In its first six points of error, R&R Resources challenges the awards of damages for breach of contract, contending that the damage awards are not

7

supported by legally and factually sufficient evidence and are excessive.

The sufficiency of the evidence is measured by the questions and instructions actually submitted to the jury in the charge. *See Regal Fin. Co. v. Tex Star Motors, Inc.*, No. 08-0148, 2010 Tex. LEXIS 611, at *14 (Tex. Aug. 20, 2010) (evidentiary sufficiency must be measured against jury charge); *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 (Tex. 2005); *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71(Tex. 2000) (court bound to review evidence in light of instruction submitted to jury without objection); *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (when submitted without objection, court's charge, not some other unidentified law, measures sufficiency of evidence). The jury question and instructions in this case relating to breach of contract damages instructed the jury to consider the following element of damages and "none other":[7]

> Benefit of the Bargain- The difference, if any, between the type, quality, quantity, timing and value of the services to be performed by Defendant for the Plaintiffs pursuant to the Ullrich-JOA and the Goebel-JOA and the services actually performed by Defendant.

Using the charge and instructions as a starting point, we review the record for evidence that is probative of benefit-of-the-bargain damages as defined in the charge. Evidence of any other type of monetary damages resulting from a breach of either JOA will not support an award of contract damages in this case.

Bill Atwood, a certified fraud examiner, testified that after reviewing R&R's records, including deposit slips, bank statements for the joint account, joint interest billing statements for the

---

[7] The court also submitted a definition of "incidental damages," but the jury did not award any amount for incidental damages, and appellees do not appeal.

Ullrich and Goebel redrills, joint interest billing statements related to expenses for normal operations, and invoices and revenue statements for each well, he concluded that R&R failed to timely provide its share of funding. He concluded that "[i]nstead of timely paying vendors, R&R Resources utilized plaintiffs' funds for unintended purposes." Using a chart of well cash flows that he created from R&R Resources' records, Atwood testified regarding R&R Resources' bank balances:

Q:     And the sum total of this exhibit, there is not the correct amount of money in the bank account to pay for invoices—

A:     That's correct.

Q:     that—that there should be?

A:     That's—that's correct. At the same time, with the equity contributions of the plaintiffs as well as the other investors we have learned about, there was sufficient cash to pay operating expenses.

Q:     But it wasn't—

A:     And production.

Q:     But it just wasn't in the bank account?

A:     Exactly.

Atwood also testified that, in his opinion there were periods of time when money was missing from the joint account.

Roger Slayton testified that based on his review of well expense invoices and R&R Resources' bank statements, as well as conversations with some of R&R Resources' vendors, he determined that although appellees had timely contributed their funds to the Ullrich and Goebel

9

projects, R&R Resources "was holding [their] money and not paying the bills," and appellees' capital contributions were not in R&R Resources' bank account when they should have been. Slayton testified that instead of using R&R Resources' funds to timely pay expenses, R&R Resources made installment payments over numerous months. Using two of R&R Resources' exhibits listing assets and sources of funds for each well account, as well as R&R Resources' bank statements and deposit slips, Slayton created two exhibits. One exhibit showed a shortage of $76,373.40 in the Ullrich account as of April 30, 2002, and the other showed a shortage of $149,972.50 in the Goebel account as of January 31, 2003.

Relying specifically on these two exhibits, appellees assert that Atwood's and Slayton's testimony supports the jury award of "contract damages of $75,000 for Ullrich (compared to $76,373.40 as shown on Plaintiffs' Exhibit No. 169) and $130,000 for Goebel (compared to $149,972.50 as shown on Plaintiffs' Exhibit No. 168)." However, this evidence is not probative of benefit-of-the-bargain damages as set out in the jury charge. There is no evidence in the record to tie the alleged shortages in the well accounts on particular dates to a difference between the value of services agreed to and those actually performed. There is no evidence from which a reasonable juror could conclude that due to the alleged shortages in the accounts on two particular days appellees had to pay additional expenses they would otherwise not have paid, or that the alleged shortages reduced profits that appellees reasonably expected to receive as a result of their investment in the wells.[8] There is no evidence that R&R Resources' failure to contribute its share of funding

---

[8] For example, although there was testimony that the Ullrich well was not drilled to the location originally contemplated due to a shortage of funds to pay for the drilling, there was no testimony tending to show that appellees could have enjoyed a higher return on their investment, or

10

or timely pay necessary expenses resulted in a decrease in appellees' revenues or an increase in appellees' expenses. R&R Resources' improper accounting and operational practices *may* have caused "benefit of the bargain damages" such as loss or delay of revenue; payment of excessive or unnecessary lease or well expenses; late payment of lease or well expenses; exposure to lease or well creditors for non or late payment; the loss, interruption, or delay in production of valuable minerals; or injury or damage to the well bores or equipment and materials located on the leases or wells. *See R & R Res. Corp. v. Echelon Oil and Gas, L.L.C.*, No. 03-05-00479-CV, 2006 Tex. App. LEXIS 326, at *20-21 (Tex. App.—Austin Jan. 10, 2006, no pet.) (mem. op.). The record, however, does not contain evidence to quantify any such damages appellees may have suffered as a result of R&R Resources' conduct. And there is no evidentiary connection between the account shortages Atwood and Slayton testified to and the difference in the value of the services to be performed by R&R Resources versus the services it actually performed.

Appellees have not directed us to, nor have we found, any evidence that addresses the difference between the value of the services promised by R&R Resources and the value of the services provided, as required by the jury charge definition of benefit-of-the-bargain damages. Thus, even viewing the evidence in the light most favorable to the verdict, no rational juror could have determined that appellees suffered $205,000 in damages as a result of R & R Resources' breach of the Ullrich and Goebel JOAs based on the damage instruction submitted to the jury. *See City of Keller*, 168 S.W.3d at 807, 810. We reverse the district court's award of $205,000 in damages for breach of contract and render judgment that appellees take nothing on their breach of contract claim.

---

even that the well would have been more productive, had it been completed as originally planned.

11

***Statutory Theft***

The jury awarded appellees $50,000 in damages under their statutory theft claim. In four points of error, R&R Resources argues that the award of damages for theft is not supported by legally and factually sufficient evidence and is excessive. R&R Resources also contends that appellees are barred from recovering damages for statutory theft as a matter of law because a statutory theft claim must be supported by an injury independent of a breach of the JOAs.

In reviewing the legal sufficiency of the evidence supporting the jury's finding, we again start with the question and instructions actually submitted to the jury. *Osterberg*, 12 S.W.3d at 55. The jury was asked:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiffs for their damages, if any, as a result of Defendant's use of the appropriation of Plaintiffs' personal property.
>
> Consider the element of damages listed below and no other.
>
> Loss of Value- The value for the loss of the use of the appropriated personal property.

The jury answered with damages in the amount of $50,000.

We consider, then, whether there is evidence to support a finding that "the value of the loss of the use of the appropriated personal property" was $50,000, which necessarily requires that we first identify what property was actually appropriated. Appellees contend that the statutory theft claim arises out of the circumstances surrounding payments to a particular vendor, Apache Tubular. Apache Tubular (and a related entity, Four Star Pipe Services) provided casing, drillpipe, and production tubing to the Ullrich well. The total value of the materials provided was $85,854.05.

12

Appellees asserted that they contributed funds to the joint account to pay for their share of the Apache Tubular vendor invoices for materials for the Ullrich well but that R&R Resources did not pay the entire vendor invoice with funds from the joint account. Instead, R&R Resources wrote two checks to Apache Tubular totalling $29,299.93, leaving a balance of $56,554.12. To satisfy the remaining balance, R&R Resources transferred a 5% working interest in the Ullrich well to Apache Tubular.[9] R&R Resources then credited itself with an in-kind capital contribution of $50,000 to the joint account.[10] There is no evidence that Apache Tubular sought additional payments, contended that its invoices had not been paid in full, or disputed that the transfer of the interest owned by R&R Resources fully satisfied the payment obligation. At trial, Doutel testified that the transfer of R&R Resources' working interest in satisfaction of the Apache Tubular debt was an in-kind contribution by R&R Resources equivalent to payment of a portion of R&R Resources' share of the Ullrich well expenses.

Appellees contend that R&R Resources appropriated approximately $56,000 of appellees' money because "even though appellees were charged and paid for the entire $85,554.05, R&R Resources kept the remaining $54,544.12 [sic]." However, there is no evidence that this transaction deprived appellees of any of their property. Appellees do not dispute that they were obligated to pay their share of the Apache Tubular invoice, and they do not contend that they were asked to, or did, contribute funds to the joint account in excess of their percentage share. Appellees

---

[9] The 5% working interest transferred was an interest wholly owned by R&R Resources.

[10] Although Apache Tubular accepted the 5% working interest owned by R&R Resources in full satisfaction of the $56,554.12 owed to it for materials provided to the Ullrich well, R&R Resources credited itself with an in-kind contribution to the joint account of only $50,000.

13

were not entitled to a refund of the cash they contributed to pay their share of the Apache Tubular invoice simply because R&R Resources paid a large percentage of the invoice with a personal asset.[11] And R&R Resources was entitled to credit itself with an in-kind contribution to the joint account since it used a personal asset to pay part of an Ullrich well expense. Although there was evidence of shortages in the joint account at certain periods of time, appellees did not contend that they were owed any additional funds after the final accounting was done.[12]

_____

[11] The result would be different had R&R Resources given Apache Tubular a working interest owned by the appellees, or used some other partnership asset to pay the balance of the invoice. In that case, appellees would indeed have been entitled to a refund of at least a portion of the cash they contributed to pay the Apache Tubular invoice.

[12] There was some evidence that Slayton's company, Tex-El, was owed a refund after the final accounting was done, and although Slayton contends that R&R Resources delayed payment, he also affirmed that the refund was eventually paid:

Q:      So what I'm looking at are the facts. The undisputed facts are that at the end of the day, you're owed a small refund once Goebel–once Toennis is actually paid by you and Ullrich is paid by you and Goebel came in under budget, significantly under budget as a result of the defendant's operations, you're owed a small refund?

A:      Right.

*      *      *      *

Q:      And you, in fact, received your refund in July?

A:      July. It was a handwritten check from Mr. Doutel, not submitted through Jane.

Q:      That's fine. It's a check that came from the defendant that he didn't hold your money. You sent him the demand on April 30; responds May 30. You are getting it back July 11. That's not theft.

A:      No. I'm not saying that was theft.

There was also evidence that Echelon was entitled to a refund of $7,240, but Atwood testified that

14

At trial, Atwood testified concerning the payment to Apache Tubular and in-kind capital contribution R&R Resources credited itself with in the joint account:

Q:      [A]nd then if you look at that exhibit, Bill, what does it tell you about R & R's monetary contribution, actual contributions to the well?

A:      According to this schedule, R & R did not contribute to the well at all.

Q:      All right.  It shows Apache Tubular on there, which you have never seen anything about that?

A:      Apache Tubular, I had seen Apache Tubular reference before as a vendor for production, operation of these wells.

Q:      And now, if you look at that list, it says contribution of services and equipment—or what does it say?

A:      It says contribution of equipment/services.

Q:      And from looking at the final accounting of the drilling invoices, my clients and the other investors have already paid for that, haven't they?

A:      Sure.

Q:      Do you know of any accounting principle that would allow someone to take someone's money for those services and equipment and then try to also use it as a [capital] contribution back into the well?

A:      It's kind of a double whammy there.

The "double whammy" Atwood testified to would only have occurred had R&R Resources in fact "tr[ied] to use [appellees'] money as a [capital] contribution back into the well."  There is no evidence that it did.  The evidence was that R&R Resources gave itself credit in the joint account for using its own personal asset (the 5% working interest) to pay for an Ullrich well expense (the

_____

that money had been refunded to Echelon by the time of trial.

15

$56,533.14 Apache Tubular invoice). There is no evidence that appellees paid more than their percentage share into the joint account, or that R&R Resources deprived appellees of the value of their monetary contribution to the joint account.[13]

The most that a reasonable juror could infer from the evidence presented at trial is that (1) R&R Resources made a cash call to appellees for their proportionate share of the Apache Tubular invoices, (2) appellees responded to the cash call by contributing their proportionate share of the invoiced amounts into the joint account, (3) there was no dispute regarding whether appellees were obligated to pay their proportionate share of the invoiced amount; (4) R&R Resources used $29,299.93 of cash from the joint account to pay part of the invoices and satisfied the remaining balance of $56,554.12 by giving Apache Tubular one of its own assets—a 5% working interest in the Ullrich well, and (5) R&R Resources credited itself with $50,000 in-kind contribution to the joint account.[14] A reasonable juror could not infer from this evidence that, as appellees contend, R&R

---

[13] Atwood further testified:

Q:    Mr. Atwood, if the evidence is that there was 56,000 and some change in bills from Apache and another vendor that's related to Apache, and he took the investors' money for that and instead of paying Apache gave Apache a 5 percent interest—which is the exhibit you are showing right here—and gave it a $50,000 equity contribution, would he owe the money that he collected from the investors? Would he owe it back to them?

A:    Absolutely.

However, Atwood's affirmative response to this hypothetical question is not itself evidence that R&R Resources deprived appellees of their property. Moreover, the question mischaracterizes the nature of the transaction by incorrectly implying that R&R Resources paid Apache Tubular using a partnership asset (a "5 percent interest" in the well or "a $50,000 equity contribution") rather than a personal asset (a 5% working interest owned by R&R Resources).

[14] Before trading a 5% working interest in the well to Apache Tubular, R & R Resources' working interest was approximately 30%. Consequently, it would have been responsible for paying

Resources deprived them of the $56,000. It follows, therefore, that there is legally insufficient evidence to support a finding that any monetary damages could result from "the loss of the use of the appropriated personal property." We therefore reverse the district court's award of $50,000 in damages for statutory theft, and render judgment that appellees take nothing on their statutory theft claim.[15]

### Fraud

The jury awarded appellees $100,000 in damages for fraud committed by R&R Resources.[16] In eight points of error, R&R Resources challenges the finding that it committed fraud, and in three points of error R&R Resources argues that the award of damages for fraud is not supported by legally and factually sufficient evidence and is excessive. For both issues, we begin the analysis with the question and instructions submitted to the jury. *See Osterberg*, 12 S.W.3d at 55.

For the determination of R&R Resources' liability for fraud, the jury question asked whether the jury found by clear and convincing evidence that R&R Resources committed fraud against appellees. To obtain a finding that R&R Resources committed fraud, appellees had to

---

approximately $25,663.24 of the Apache invoice. The evidence shows that R & R Resources contributed an asset valued at roughly twice that amount (the 5% working interest valued at $50,000) to pay that invoice. If R & R Resources took some cash from the joint account to compensate it for its in-kind over-contribution to payment of the Apache Tubular invoices, such action, though likely a breach of the JOA and certainly a questionable accounting practice, would not constitute a deprivation of appellees' property to support a claim of theft.

[15] Because we find legally insufficient evidence to support the award of damages, we need not consider R&R Resources' argument that appellees are barred from recovering for statutory theft as a matter of law by the independent injury rule.

[16] Damages were awarded for "fraud and/or failure to comply with fiduciary duties." We need not address appellees' breach of fiduciary duty claim, however, because we find no error in the damages award based on fraud even in the absence of the breach of fiduciary duty claim.

present sufficient evidence of each element of at least one of the two alternate definitions of fraud in the jury charge—one based on misrepresentation and one based on failure to disclose a fact. R&R Resources contends that the evidence is legally and factually insufficient to support either definition.

With respect to the failure to disclose a fact, appellees presented evidence that R&R Resources did not make its required capital contributions, and that because R&R Resources maintained the financial records, it was able to conceal this from appellees and benefit from its wrongful conduct. R&R Resources challenges the jury's findings that (1) R&R Resources intended, by failing to disclose the fact, to induce appellees to take some action, and (2) appellees' injury resulted from their acting without knowledge of the undisclosed fact.

Regarding R&R Resources' intent, appellees' expert witness testified that based on his review of thousands of documents he concluded that the misuse of funds was intentional. R&R Resources contends that the expert witness's attempt to ascertain R&R Resources' or Doutel's subjective intent was purely speculative. However, the expert witness gave a detailed explanation of the basis for his conclusion that Doutel deliberately did not disclose that R&R Resources had not contributed its share of funding, based on the records and documentation he had reviewed. In addition, R&R Resources was the only party with access to the financial information. The required contributions were not made, and the financial records showed that they were not made, despite the fact that R&R Resources is in the business of buying and selling working interests. Doutel himself testified that R&R Resources did not make monetary contributions but "stood good" for them. Meanwhile, appellees continued to make their required contributions. There was testimony to the effect that when Doutel was confronted with appellees' concerns, his reply was "I'll do it any way I want." There is sufficient evidence from which a reasonable fact-finder could infer that R&R

18

Resources' non-disclosure regarding its non-contributions was intentional.

As to whether appellees' lack of knowledge caused their injury, the jury awarded damages based on appellees' loss of business opportunity. Appellees' expert witness testified that if the non-operators were aware of R&R Resources' contributions activity, Doutel would have had to provide the money or forego his interest. In that event, appellees could have sold R&R Resources' working interest and thereby obtained a profit. There was evidence that such profit was available. Slayton testified that appellees successfully sold their own working interest ownership percentages to investors, and at times when Doutel informed appellees he could not sell all of the interest committed under the JOAs, successfully "popped" sales for R&R Resources, selling some of R&R Resources' ownership percentage. There was also evidence that such profit, although available, was not sought due to R&R Resources' non-disclosure of its failure to make required contributions. Appellees' expert witness blamed appellees' unawareness on the fact that Doutel controlled the information flow. He agreed that based on his review of all the documents, it was "fair to assume that if they had been told what was going to happen, that they surely wouldn't have gotten involved with R&R Resources and would have sold these units and gone on." Slayton likewise testified that appellees were relying on Doutel's financial information, and that his "biggest complaint" about Doutel was "the fact that he misrepresented to us that he was funding his share of the well." There is sufficient evidence from which a reasonable fact-finder could conclude that appellees' injury resulted from their acting without knowledge of R&R Resources' undisclosed facts.

For the determination of appellees' damages caused by R&R Resources' fraud, the following jury question and instruction were given:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiffs for their damages, if any, proximately caused by such fraud . . . ?

Consider the elements of damages listed below and none other.

Loss of Business Opportunity - The damages suffered by the loss of business opportunities Plaintiffs experienced by designating Defendant Operator of the three leases/wells.

The jury answered with damages in the amount of $100,000.

R&R Resources asserts that there is no evidence that appellees suffered $100,000 in damages by the "mere act" of designating R&R Resources as operator. The jury instruction required that the jury consider such damages and "none other." However, appellees presented evidence that had they known of R&R Resources' actions they would have been able to obtain additional profits, and their lack of knowledge was caused by R&R Resources' fraudulent failure to disclose, which was made possible by the fact that R&R Resources was the operator of the wells and, therefore, the only party with access to the financial information. In other words, it was R&R Resources' status as operator that enabled it to commit fraud and cause appellees to incur damages for loss of business opportunity. That loss of business opportunity was the amount of profit appellees would have earned in the event they were timely informed of R&R Resources' failure to make required contributions and were then able to make their own investments in the amount of such required contributions.

Appellees' expert witness testified regarding damages. He first calculated damages based on simple interest, recognizing that since appellees eventually received their revenues, one way to calculate their damages would be to provide the interest for the period that they did not have their money. Under that approach, R&R Resources owed appellees $3,405. Next, the witness

20

calculated damages based on loss of opportunity. For both the Goebel and Ullrich wells, he testified regarding the number of points assigned to R&R Resources that could have been sold, the average selling prices, and the costs per unit. From these amounts, he calculated lost profits of $151,604 plus $39,937 in interest for the Goebel well, and $111,300 plus $25,899 in interest for the Ullrich well. He concluded that these amounts of lost business opportunity were "a reasonable calculation of the actual damages" incurred, and that, due to the nature of appellees' business, the loss-of-business-opportunity approach was a more appropriate measure of damages than the simple-interest approach. R&R Resources does not point to any evidence controverting this testimony.

We conclude that a reasonable fact-finder could form a firm belief or conviction that R&R Resources committed fraud and that appellees were entitled to $100,000 in damages as a result. *See J.F.C.*, 96 S.W.3d at 266. Similarly, a reasonable fact-finder could have resolved disputed evidence in favor of these findings. *See id.* We affirm the district court's judgment on appellees' fraud claim and its award of $100,000 in damages to appellees based on that claim.

### One-Satisfaction Rule

In one point of error, R&R Resources argues that appellees' causes of action for breach of contract, statutory theft, and fraud are based on identical facts and circumstances and that, therefore, appellees' recovering damages under each cause of action violates the one-satisfaction rule. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7-8 (Tex. 1991). The one-satisfaction rule provides: "There can be but one recovery for one injury, and the fact that. . . there may be more than one theory of liability [] does not modify this rule." *Tony Gullo Motors I, L.P.v. Chapa*, 212 S.W.3d 299, 303 (Tex. 2006) (quoting *Stewart Title Guar. Co.*, 822 S.W.2d at 8). However,

21

because we are reversing the district court's award of damages to appellees for breach of contract and statutory theft, the only damages award remaining is for fraud. Therefore, the one-satisfaction rule is not implicated, and we do not address this point of error.

### Prior Breach by Appellees

In four points of error, R&R Resources argues that the jury's determination that appellees did not breach the JOAs is error. According to R&R Resources, the jury's award of damages to appellees should be disregarded due to appellees' prior breach of the JOAs, and the jury should have awarded damages to R&R Resources for such prior breach. This is a "conclusive evidence" point of error: R&R Resources attempts to overcome, as a matter of law, an adverse fact finding on an issue for which it had the burden of proof. *See Stable Energy*, 52 S.W.3d at 331.

Appellees' alleged breach of the JOAs is their failure to timely pay their share of Authorities for Expenditure ("AFEs") under the terms of the JOAs. R&R Resources was responsible for estimating the money needed to acquire, redrill or repair, and operate each well and sending AFEs to the working interest owners. R&R Resources alleges that appellees failed to pay the full amounts required, in accordance with the AFEs, as of the date drilling began.

Appellees presented testimony, however, to the effect that the parties had agreed to a tiered payment schedule, with respect to the Ullrich and Goebel wells, under which appellees would provide 60% funding by the time the rig moved on location, and the remainder by later dates. There was testimony that appellees' final ownership percentages in the Goebel well differed from that set out in the Goebel JOA. There was also testimony that, with respect to the Toennis well, the parties initially agreed that appellees' costs would be taken out of the revenue subsequently

22

generated from production. In the event that all such testimony is, in fact, true, appellees completely and timely paid their shares of the AFEs and did not breach the JOAs.

However, the applicable jury question asked whether appellees failed to comply with the JOAs, and the jury charge defined the JOAs as "the Model Form Operating Agreement . . . that was executed by Plaintiffs, Defendant and others." The definitions of the JOAs in the jury charge do not include oral amendments or modifications, and appellees did not object to the charge. Thus, R&R Resources contends, appellees cannot rely on their evidence of any oral agreements adjusting the payment method applicable to the AFEs. "[I]t is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge." *Osterberg*, 12 S.W.3d at 55. In the absence of a proper objection, the court's charge is controlling, even if it is not entirely correct. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 727 (Tex. 2001); *Zimlich*, 29 S.W.3d at 71.

Even if appellees cannot rely on evidence of oral amendments or modifications to the JOAs, however, there are documents in the record demonstrating amendments and modifications. "Under generally accepted principles of contract interpretation, all writings that pertain to the same transaction will be considered together, even if they were executed at different times and do not expressly refer to one another." *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999).

Appellees presented checks from Echelon, Ratex Energy, Inc. (the predecessor company to Tex-El), and BairTex showing payment of 60% of the Ullrich AFE consistent with a tiered payment schedule. Appellees presented a cash call document prepared by Doutel apparently showing a tiered payment arrangement for the Goebel well. Appellees also presented an email from

Doutel seemingly confirming that funding for the Toennis well was not due until after the workover was complete. In the email, Doutel gives an update on the well's production, notes that the invoices are in from the workover "a month ago," and asks Slayton and Snider for "feedback . . . as to how [they] want [him] to invoice" their share of workover expenses. Appellees note that if the parties had not agreed to the tiered payment schedules reflected in the checks and appellees had not timely funded their portion of the Ullrich well, R&R Resources would likely not have requested that appellees work with it on the Goebel well. Likewise, appellees note that if they had not timely funded their portion of the Goebel well as reflected in the cash call document, R&R Resources would likely not have agreed to operate the Toennis well.

The checks, cash call document, and emails can be considered in determining the intent of the parties. Thus, even without considering appellees' testimony that the tiered payment structure resulted from oral modifications to the JOAs, there is some evidence of the tiered payment schedule that the jury could have considered in finding that appellees did not breach the JOAs. Therefore, R&R Resources did not establish that appellees breached the JOAs as a matter of law. *See Sterner*, 767 S.W.2d at 690. We overrule R&R Resources' points of error.

### *Attorneys' Fees*

In one point of error, R&R Resources argues that the district court erred in awarding attorneys' fees to appellees. The jury awarded $160,000 for preparation and trial, $35,000 for an appeal to the court of appeals, and $25,000 for an appeal to the Texas Supreme Court. The district court rendered judgment on the amounts awarded by the jury.

First, R& R Resources contends that the award of attorneys' fees is an abuse of

24

discretion because appellees failed to segregate their fees. Fee claimants are required to segregate fees between claims for which they are recoverable and claims for which they are not. *Tony Gullo Motors*, 212 S.W.3d at 311. However, if a party does not object to the fact that the attorneys' fees are not segregated as to specific claims, the objection is waived. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997). Although the jury question did not segregate fees between appellees' claims and defenses, R&R Resources did not object. Therefore, R&R Resources waived any error in the district court's failure to require appellees to segregate their attorneys' fees, and any such error cannot serve as a basis for barring appellees' recovery of attorneys' fees. *See id.* at 389-90. Consequently, we need not address appellees' argument that there was no way to segregate the fees because the facts supporting each of the claims were intertwined. *See Tony Gullo Motors*, 212 S.W.3d at 313-14.

Next, R&R Resources contends that the attorneys' fees awarded are unsupported in the event this Court reverses the district court's judgment on breach of contract and statutory theft. As a general rule, attorneys' fees are not recoverable unless allowed by statute or by contract between the parties. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. National Dev. & Research Corp.*, 299 S.W.3d 106, 120 (Tex. 2009). Attorneys' fees are recoverable in connection with a breach of contract claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2008). However, because we reverse the jury's award of breach of contract damages, appellees cannot recover attorneys' fees based on this claim. *See Green Int'l*, 951 S.W.2d at 390; *Horizontal Holes, Inc. v. River Valley Enters., Inc.*, 197 S.W.3d 834, 836 (Tex. App.—Dallas 2006, no pet.). Likewise, a party may recover attorneys' fees in connection with a statutory theft claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 134.005(b) (West 2005). However, because we reverse the jury's finding on appellees'

25

statutory theft claim, appellees cannot recover attorneys' fees based on this claim. *See id.* The only remaining money damages awarded are the $100,000 for fraud. Attorneys' fees are not recoverable for this claim. *See Tony Gullo Motors*, 212 S.W.3d at 304. Thus, R&R Resources argues that the district court's award of attorneys' fees must be reversed.

However, R&R Resources' argument fails to take into account appellees' claim under the Uniform Declaratory Judgments Act ("UDJA"). Appellees sought a declaratory judgment declaring that: (1) R&R Resources' accounting and operating practices violated the JOAs, as well as the customary, standard, and reasonable industry practices of a reasonably prudent operator, (2) these violations constituted "good cause" for R&R Resources' removal as operator, and (3) such removal and subsequent appointment and designation of the successor operator were done properly, timely, and pursuant to the JOAs. The jury found that R&R Resources breached the JOAs and should not be the operator of the three wells. In its final judgment, the district court declared that there was good cause under the JOAs to remove R&R Resources as operator of the three wells, that the removal was done properly and timely pursuant to the JOAs, and that the appointment and designation of Leexus as successor operator was done properly and timely pursuant to the JOAs. Thus, appellees prevailed on their claim for declaratory relief. *See Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) (holding that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff").

Attorneys' fees are recoverable for claims under the UDJA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008). Appellees requested attorneys' fees pursuant to the UDJA in their pleadings. The district court awarded the amounts of attorneys' fees provided by the jury,

26

but did not tie its award to appellees' breach of contract and statutory theft claims. We may, therefore, infer that the award of attorneys' fees is proper in accordance with the UDJA.[17]

Finally, R&R Resources argues that the district court failed to make appellees' appellate attorneys' fees conditional upon a successful outcome. The district court awarded appellees $35,000 "should Defendant appeal this matter to the Court of Appeals" and $25,000 "should Defendant appeal this matter to the Texas Supreme Court." We agree that an award of attorneys' fees on appeal must be conditioned on the receiving party's success. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 205 (Tex. App.—Austin 1992, no writ). Any such error is harmless with respect to the award of fees for an appeal to this Court because R&R Resources has been ultimately unsuccessful in its appeal. *See Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 236 (Tex. App.—Houston [14th Dist.] 1996, writ denied). However, we modify the award of attorneys' fees for an appeal to the supreme court by R&R Resources to be conditioned on the appeal being unsuccessful. *See Hoefker v. Elgohary*, 248 S.W.3d 326, 332-33 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("The proper remedy for an unconditional award of appellate attorney's fees is to modify the judgment and to make the award contingent upon the receiving party's success on appeal.").

---

[17] R&R Resources does not challenge an award of attorneys' fees under the UDJA. *See, e.g.*, *Kenneth Leventhal & Co. v. Reeves*, 978 S.W.2d 253, 258-59 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (reversing attorneys' fees award under UDJA where relief sought under UDJA was identical to that sought under breach of contract claim and, thus, declaratory relief was brought solely for purpose of obtaining attorneys' fees).

***Post-Judgment Motions***

In its final point of error, R&R Resources argues that it was error for its post-judgment motions not to be ruled on. After the district court signed the final judgment, R&R Resources filed a motion to disregard certain jury findings, motion for judgment notwithstanding the verdict, motion to modify, correct, or reform the judgment, and motion for new trial. The district court did not rule on the motions. The motion to modify, correct, or reform the judgment and motion for new trial were, therefore, overruled by operation of law. *See* Tex. R. Civ. P. 329b(c). R&R Resources contends that the district court erred in refusing to sign a written order ruling on the other two post-judgment motions.

However, R&R Resources has not explained how the district court's inaction, if error, was harmful. R&R Resources was not barred from presenting before this Court whatever arguments were set out in its post-judgment motions. Moreover, the district court's plenary power expired thirty days after the motion for new trial was overruled. *See* Tex. R. Civ. P. 329b(e). Thus, the district court no longer has jurisdiction over the case and cannot act on R&R Resources' motions. *See* Tex. R. Civ. P. 329b(f); *In re Southwestern Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (holding trial court's order issued after its plenary power had expired void). We overrule the point of error.

***Conclusion***

We reverse the district court's judgment awarding damages for breach of contract and statutory theft, and render judgment that appellees take nothing on their breach of contract and statutory theft claims. We affirm the remainder of the district court's judgment, except that the

judgment is modified such that the award of attorneys' fees and expenses should R&R Resources appeal this matter to the Texas Supreme Court is made contingent on R&R Resources' appeal being unsuccessful.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Rose[18]

Modified and, as Modified, Affirmed in part; Reversed and Rendered in part

Filed:   January 14, 2011

---

[18]  Authoring duties for this opinion were reassigned in November 2010.