CITY OF FORT WORTH,
Texas, Petitioner,

v.

Julius D. ZIMLICH, Respondent.

No. 98–1014.

Supreme Court of Texas.

Argued Dec. 8, 1999.

Decided June 29, 2000.

Rehearing Overruled Nov. 9, 2000.

Ann Clarke Snell, Madison David Jechow, Amy Warr, Bickerstaff Heath Smiley Pollan Kever & McDaniel, Austin, for Petitioner.

Douglas W. Alexander, Scott Douglass & McConnico, Austin, Andrew Monroe Trusevich, Ford Yungbult White & Salazar, Dallas, David Guillory, Nacogdoches, Dana C. Livingston Cobb, Cook Roach & Lawless, William Powers, Jr., Austin, for Respondent.

Justice GONZALES delivered the opinion for a unanimous Court.

In this case we must decide whether the City of Fort Worth engaged in retaliatory discrimination against Julius Zimlich, an employee, in violation of the Whistleblower Act. *See* TEX. GOV'T CODE §§ 554.001–.009 (Supp.2000). The trial court rendered judgment on a jury verdict, awarding Zimlich actual damages for lost earnings and mental anguish, and punitive damages. The City appealed, asserting primarily that Zimlich adduced no evidence that the City discriminated against him and no evidence to support the punitive damages award. The court of appeals affirmed the trial court's judgment. 975 S.W.2d 399, 415. We conclude that there is legally sufficient evidence to support causation for one of the three discrimination claims. But we remand that claim to the court of appeals to conduct a factual sufficiency review of the causation evidence. We further conclude that there is no evidence to support the remaining two discrimination claims and reverse the award of damages for lost past earnings and lost future earnings. Additionally, we conclude there is no evidence to support a finding of malice, and therefore reverse the award of punitive damages. Accordingly, we reverse the judgment of the court of appeals and

render judgment in part and remand in part to the court of appeals.

# I

## Background

In 1993, Julius Zimlich was employed as a deputy marshal in the warrants division of the City of Fort Worth Marshal's Office. He had served as a peace officer for fourteen years, including four years as a deputy marshal. In his four years at the Marshal's Office, Zimlich had good relationships with his supervisors and received excellent evaluations.

In May of 1993, Zimlich and another deputy marshal, Rick Estorga, were assigned to the City's newly-created Solid Waste Environmental Enforcement Program (SWEEP). SWEEP was created through a grant from the Texas Natural Resource Conservation Commission (TNRCC) to increase the enforcement powers of the City's Code Enforcement Division (CED). Prior to the SWEEP program, CED was the City department primarily responsible for enforcing City ordinances and regulations, including policing illegal dumping.

In October 1993, Zimlich received an anonymous report about an illegal disposal site operating in a residential area of Fort Worth. Zimlich investigated the site and concluded that it violated state statutes and regulations. Zimlich informed his immediate CED supervisor, Juan Mejia, that he was investigating the site. In what Zimlich describes as an unusual order, Mejia told Zimlich to report the findings to the CED Superintendent, Rufino Mendoza. Mendoza in turn instructed Zimlich to discuss the site with Director of City Services, Tom Davis. Zimlich visited with Davis about the site, and Davis told Zimlich to stop the investigation because "there was nothing out there."

The owner of the contaminated site was Ted Peters, a former Fort Worth City Council member. On the day Davis ordered Zimlich to stop his investigation, Davis met with Peters and informed him that the site did not have the proper permit for waste disposal and that Peters must stop dumping materials there. Davis also told Peters to remove some of the waste and bury the rest.

Zimlich reported his communications with Davis and Mendoza to Marshal Norman Donoho in November 1993. Zimlich told Donoho that he believed Davis and Mendoza were preventing Zimlich from investigating an illegal disposal site. Donoho told Zimlich that he would look into the matter and that Zimlich should make whatever reports he felt were necessary to appropriate authorities. The next month, Zimlich reported the site to the TNRCC and reported his belief that Davis and Mendoza were obstructing his investigation to the Office of the Attorney General and the Tarrant County District Attorney's Office.

In February 1994, Zimlich discussed the Peters site with a Fort Worth television station airing a series on illegal dumping. Following the news program, the City Council requested an explanation. Davis authored a response that was signed by an assistant city manager, stating that Davis's investigation of the site revealed only non-hazardous materials, and that Davis had instructed the owner to remove some of the waste and bury the rest. A TNRCC inspection later revealed, however, that hazardous solid waste had been illegally dumped on the site.

In April 1994, the SWEEP program was eliminated due to a reduction in state funding. Zimlich requested a transfer back to the warrants division of the Marshal's Office. Donoho approved the transfer, but permanently assigned Zimlich and Estorga to courthouse security duty even though previous assignments there were on a temporary rotating basis and there were openings in the warrants division. Some deputies testified that they viewed courthouse security as low-level duty usually designated for rookies and retirees. Zimlich testified that he asked Donoho why he was

assigned courthouse duty, and Donoho replied that Zimlich was "lucky to have a job after the [Peters] incident." Four months after Zimlich returned to the Marshal's Office, Donoho conducted an annual performance evaluation for Zimlich. Prior to his SWEEP duty, Zimlich's superiors had always commended him for his superior performance and evaluated him as above average. Zimlich's evaluation after he returned to the Marshal's Office, however, was significantly lower. Donoho rated Zimlich as average and noted that Zimlich was not a team player and that he needed to accept his job assignments willingly. Zimlich officially noted his disagreement with his evaluation.

After eight months on courthouse security duty, Donoho assigned Zimlich to his preferred position in the warrants division. Later, a senior deputy position became available in the department. Zimlich applied for the position, and was interviewed for the job along with five other candidates, but he was not promoted. Donoho was one of the three members of the panel that made the promotion decision. In the summer of 1995, Donoho retired and was replaced by Marshal Rutledge. Within several months, Zimlich was promoted to senior deputy. Soon after, a position for chief deputy became available. Zimlich applied for this position, but was not promoted.

Based on this evidence, the jury concluded that the City discriminated against Zimlich with malice in retaliation for reporting Davis's illegal obstruction of an official investigation. The jury awarded $200 for lost earnings in the past, $300,000 for lost earnings in the future, $300,000 for mental anguish, and $1,500,000 in punitive damages. The City appealed, and the court of appeals affirmed the trial court's judgment. 975 S.W.2d at 415. The City now petitions this Court for review.

## II

### Discussion

The City raises several issues on appeal. First, the City contends that it cannot be liable under the Whistleblower Act since there is no evidence that the City discriminated against Zimlich. Second, the City argues that there is no evidence of malice to support the punitive damages award. The City also challenges whether venue was proper, whether the jury charge was supported by the pleadings, and whether Zimlich made admissions inconsistent with the judgment. We address each of these issues in turn.

### A

■ A governmental entity is liable for damages under the Whistleblower Act if it discriminates against a public employee who reports a violation of law. *See* TEX. GOV'T CODE §§ 554.001–.009 (Supp.2000). The statute in force at the time of the alleged discrimination against Zimlich provides: "A state agency or local government may not suspend or terminate the employment of or discriminate against a public employee who in good faith reports a violation of law to an appropriate law enforcement authority." Act of May 22, 1993, 73rd Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 610 (amended 1995) (current version at TEX. GOV'T CODE § 554.002) (Supp.2000). While the statute does not explicitly require an employee to prove a causal link between the report and the subsequent discrimination, we held in *Department of Human Servs. v. Hinds*, 904 S.W.2d 629, 633 (Tex.1995), that the employee must demonstrate all elements of the action, including causation, by a preponderance of the evidence. To show causation, a public employee must demonstrate that after he or she reported a violation of the law in good faith to an appropriate law enforcement authority, the employee suffered discriminatory conduct by his or her employer that would not have occurred when it did if the employee had not reported the illegal conduct. *See Hinds*, 904 S.W.2d at 633.

■ Zimlich contends that he reported a violation of the law to the appropriate

authorities, and the City discriminated against him because of his report. Specifically, Zimlich alleges that the City discriminated against him in violation of the Act through three adverse employment decisions: (1) his assignment to courthouse security duty, (2) his delayed promotion to senior deputy, and (3) his not being promoted to chief deputy. We note that Zimlich sought no recovery for employment decisions made by Davis or Mendoza, nor does he allege they were involved in the alleged adverse employment decisions. Therefore, Davis and Mendoza's retaliatory intent, if any, is irrelevant because, as we state in *Hinds*, bad motives never acted on cannot be a basis for a whistleblower action. *See Hinds*, 904 S.W.2d at 636.

The jury found the City liable under the Whistleblower Act under a broad form submission. The City appealed, arguing that the evidence is not legally or factually sufficient to support a finding of liability under the Act because there is no evidence that the adverse employment decisions would not have been made if Zimlich had not reported Davis's conduct. In its review, the court of appeals noted that there was evidence that Zimlich made a report of Davis's conduct in good faith to the proper authorities. Additionally, the court found evidence that Zimlich later suffered adverse employment decisions. The court of appeals, however, never considered whether there was any evidence that Zimlich's report of Davis's conduct caused the adverse employment decisions. Rather, the court concluded that the evidence of the report and subsequent adverse employment decisions was sufficient to allow the jury to reasonably infer that Zimlich's report was the cause of the adverse employment decisions.

 We disagree that a jury may infer causation without some evidence to support such a finding. If an employee who reports illegal conduct can recover without evidence of causation, it would effectively give the employee life tenure—a proposition we expressly rejected in

*Hinds*. *See Hinds*, 904 S.W.2d at 633. We held in *Hinds* that a plaintiff must adduce some evidence to support the conclusion that an adverse employment decision would not have been taken if the employee did not in good faith report illegal conduct. *See Hinds*, 904 S.W.2d at 633. Here, in order to show a violation of the Act, Zimlich must have adduced evidence that the adverse employment actions would not have been taken if Zimlich had not reported Davis's conduct. We note, however, that the City does not challenge the court of appeals's conclusions that there was sufficient evidence to support findings that Zimlich made a good faith report of a violation of law to an appropriate law enforcement authority and that the City undertook adverse employment decisions against Zimlich. Thus, we only consider the City's legal sufficiency challenge to the evidence of causation.

Our legal sufficiency review is shaped by the charge and the City's specific arguments. The liability question inquired whether the City "discriminat[ed] against Julius Zimlich—by changing his job duties, or by failing to promote him to senior deputy (sergeant), or by failing to promote him to chief deputy." There was no separate causation question, although the charge instructed the jury that liability under the Act requires proof that discrimination was a proximate cause of damages, and that an employer does not discriminate against an employee for reporting a law violation unless the employer's discriminatory act would not have occurred had the report never been made. The damages question segregated damages resulting from retaliation into lost past earnings, lost future earnings, and mental anguish.

The City does not complain about the charge. It argues that there is no evidence that any of the relevant supervisors made unfavorable employment decisions because of the report. That being the case, the City contends, the mental anguish and the lost earnings awards cannot

stand because they were based on the challenged employment decisions. Accordingly, we examine the evidence about the City's decisions to assign Zimlich to security duty, to initially pass over him for promotion to senior deputy, and to deny him promotion to chief deputy.[1]

When considering the legal sufficiency of evidence supporting a jury finding in cases such as this, we only consider evidence and inferences tending to support the finding and we disregard all contrary evidence. *See Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993). Anything more than a scintilla of evidence is legally sufficient to support the finding. *See Alm v. Aluminum Co. of Am.,* 717 S.W.2d 588, 593–94 (Tex.1986). Circumstantial evidence may be sufficient to establish a casual link between the adverse employment action and the reporting of illegal conduct. *See Continental Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996). Such evidence includes: (1) knowledge of the report of illegal conduct, (2) expression of a negative attitude toward the employee's report of the conduct, (3) failure to adhere to established company policies regarding employment decisions, (4) discriminatory treatment in comparison to similarly situated employees, and (5) evidence that the stated reason for the adverse employment action was false. *See Continental Coffee,* 937 S.W.2d at 451. But evidence that an adverse employment action was preceded by a superior's negative attitude toward an employee's report of illegal conduct is not enough, standing alone, to show a causal connection between the two events. There must be more.

We turn first to the evidence that Zimlich was placed in a low-level security position by Donoho because of his report of Davis's conduct. The evidence suggests that Zimlich, an experienced deputy, was permanently assigned to the lowest level work in the department after his report; that just prior to Zimlich's permanent assignment to security duty, Donoho had a policy of rotating officers on short-term assignments in and out of courthouse security; that Donoho reassigned a rookie officer from courthouse security duty and assigned Zimlich in his place; and that when Zimlich asked Donoho why he put Zimlich in the low-level assignment, Donoho stated that Zimlich was "lucky to have a job at all after the [Peters] incident." We conclude this circumstantial evidence adheres to the standard we announced in *Continental Coffee* and is legally sufficient to support a jury finding that Donoho's assignment of Zimlich to security duty was a result of Zimlich's report.

We consider next the evidence that because of his report of Davis, Zimlich's promotion to senior deputy was delayed. The evidence suggests Zimlich was among six qualified applicants applying for the position of senior deputy; Zimlich was not promoted when Donoho was one of the three members of the panel making the promotion decision along with the Chief Deputy under Donoho, and the Director of Municipal Courts Services, Elsa Paniagua; and Zimlich was eventually promoted to senior deputy several months after Donoho left the Marshal's Office. We conclude that this circumstantial evidence is not legally sufficient to support a finding that the delayed promotion was caused by Zimlich's report of illegal activity. To support that finding, there would have to be evidence from which a fact finder could reasonably infer that discrimination was a factor in the decision process. Some ex-

1. Because of the broad form submission, it cannot be ascertained whether the jury concluded that the City discriminated by changing Zimlich's job duties, failing to promote him to senior deputy, or failing to promote him to chief deputy. The City has not argued that it would be entitled to a new trial if the evidence was legally insufficient to support one or more of these theories of liability. Therefore, whether the rationale in our decision in *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378 (Tex.2000) should be extended to cases in which there is no evidence to support one or more theories of liability within a broad form submission is not a question that is before us.

amples of such evidence could include, but are not limited to, evidence that Zimlich was more qualified than the other candidates, or evidence that the promotion panel used different criteria to evaluate Zimlich, or evidence that Donoho somehow influenced the result of the panel. Such evidence would provide the circumstantial evidence from which a jury could infer causation. But absent evidence supporting an inference that discrimination was a factor in the promotion process, a finding of liability rests only on speculation. Therefore, the evidence is not legally sufficient to support the jury's finding of discrimination.

■ Finally, we consider the evidence that Zimlich was not promoted to chief deputy because of his report on Davis. There is evidence that a less qualified candidate was promoted to chief deputy over Zimlich. However, the evidence does not indicate who made the promotion decision other than to show that it was not Donoho, who had been retired several months. So, there is no evidence in the record before us that the decision-maker or decision-makers knew about Zimlich's report of Davis's illegal conduct, expressed a negative attitude toward Zimlich's report of the conduct, failed to adhere to established policies regarding employment decisions, or stated any reason for the adverse employment action that was false. *See Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 451–52 (Tex.1996) (discussing examples of circumstantial evidence that may be sufficient to establish a casual link between the adverse employment action and the reporting of illegal conduct). Therefore, we conclude that there is no evidence to support the jury's finding of discrimination by the City in failing to promote Zimlich to chief deputy.

Zimlich contends that even if there is no evidence that a City employee delayed or denied either of Zimlich's promotions because of discriminatory motives, they may have unintentionally acted on the bad motives of Davis and Mendoza. Zimlich ar-gues that the *Hinds* causation rule does not depend solely on the bad motives of the person or persons taking the adverse employment action. Rather, he says, the test we adopted in *Hinds* is broader—there need only be a causal connection between the report of illegal conduct and the adverse employment action. While some courts have adopted this "conduit" theory, they have limited it to circumstances in which one supervisor makes a recommendation regarding an employee to another innocent supervisor who acts on that recommendation without conducting any independent judgment. *See Long v. Eastfield College*, 88 F.3d 300, 307 (5th Cir.1996) (concluding that if the innocent supervisor "did not conduct his own independent investigation, and instead merely 'rubber stamped' the recommendation of [the discriminatory supervisor], the causal link between [the employees'] protected activities and their subsequent terminations would remain intact."); *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990) ("If [the employment board] acted as the conduit of [the supervisor's] prejudice—his cat's-paw—the innocence of its members would not spare the company from liability."); *Azzaro v. County of Allegheny*, 110 F.3d 968, 973–74 (3rd Cir.1997) (finding evidence to support liability when a discriminating supervisor designed a plan to reorganize a department that had the effect of terminating the plaintiff which was approved by others without independent scrutiny); *Blocker v. Terrell Hills City*, 900 S.W.2d 812, 814 (Tex.App.—San Antonio 1995, writ denied) (concluding that the chain of causation was broken when the supervisor who made the adverse employment decision conducted an independent review prior to making the decision).

We need not consider, however, whether liability can be based on a "conduit" theory. Even assuming for the purposes of our decision that it is a viable theory, there is no evidence here that Davis or Mendoza recommended any action that either delayed or denied either of Zimlich's pro-

motions. Therefore, there is no evidence that any City employee was the conduit for the bad motives, if any, of Davis or Mendoza.

Accordingly, we conclude that Zimlich adduced legally sufficient evidence to support the jury's finding that the City discriminated against him for reporting violations of law by assigning him low-level courthouse security duty. But there is no evidence to support the jury's finding that the City discriminated against Zimlich by delaying his promotion to senior deputy or by failing to promote him to chief deputy. Based on Zimlich's testimony and other evidence in the record, Zimlich's lost past and future earnings were based solely on the City's promotion decisions. Since there is no evidence that these decisions were discriminatory, the $200 award for lost past earnings and the $300,000 award for lost future earnings cannot be sustained.

■■■ The jury also awarded $300,000 in mental anguish damages to Zimlich. He based his claim for such mental anguish damages solely on his assignment to security duty. We note that while there is legally sufficient evidence to support a finding that Zimlich's assignment to security duty was caused by his good faith report of a violation of law, the court of appeals never considered the factual sufficiency of the causation evidence. We do not have jurisdiction to conduct a factual sufficiency review. *See Read v. Scott Fetzer Co.,* 990 S.W.2d 732, 736–37 (Tex.1998). Therefore, we remand this issue to the court of appeals to consider whether the evidence that Donoho would not have assigned Zimlich to security duty if Zimlich had not reported Davis's conduct is factually sufficient.

### B

■■■ The City also contends that there is no evidence to support the jury's award of punitive damages because there is no evidence that a City employee acted with malice. An employee who suffers

discrimination in violation of the Whistleblower Act may recover punitive damages if the employer acted with malice. *See City of Ingleside v. Kneuper,* 768 S.W.2d 451, 456–57 (Tex.App.—Austin 1989, writ denied). We have defined malice in the context of a similar punitive damages provision found in the Anti–Retaliation Statute as ill-will, spite, evil motive, or purposing the injury of another. *See Continental Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 454 (Tex.1996). Here, however, the record indicates that the issue of malice was submitted to the jury without objection under the following definition:

> You are instructed that "malice" means (a) conduct in retaliation that is intended by the city of Fort Worth [sic] to cause Mr. Zimlich substantial injury, or (b) an act carried out by the City of Fort Worth with a flagrant disregard for the rights of Plaintiff and with actual awareness on the part of the City of Fort Worth that the act will, in reasonable probability, result in harm.

Since neither party objected to this instruction, we are bound to review the evidence in light of this definition. *See Larson v. Cook Consultants, Inc.,* 690 S.W.2d 567, 568 (Tex.1985).

Zimlich relies on evidence of Davis's malice to support the punitive damages award, but we concluded above that Davis's conduct was not relevant because Zimlich did not allege that Davis engaged in any discriminatory conduct. Rather, we concluded, the only retaliatory act against Zimlich was Donoho's assignment of Zimlich to courthouse security duty. Thus, we turn to whether there is any evidence that Donoho engaged in his retaliatory conduct with the intent to cause Zimlich substantial injury, or that Donoho carried out his act with a flagrant disregard for Zimlich's rights with actual awareness that his act would, in reasonable probability, result in harm.

■■■ Our review of the record does not reveal any evidence indicating that Donoho

possessed an intent to cause substantial injury or had actual awareness of probable harm at the time he initially assigned Zimlich to security duty. And, even assuming that Donoho's intent or awareness after he assigned Zimlich to security duty is relevant, there is no evidence that Donoho later intended to cause Zimlich substantial injury or was actually aware that his act would, in reasonable probability, result in harm. Thus, we conclude that there is no evidence to support a finding of malice based on the definition in the .charge. Accordingly, we reverse the award of punitive damages. Because we conclude there is no evidence to support a finding of malice to support punitive damages, we need not address the City's arguments that punitive damages were inappropriate because Zimlich failed to adduce any evidence regarding the City's financial condition.

### C

The City also contends that the trial court improperly denied the City's motion to transfer venue. The Whistleblower Act in effect when Zimlich brought this cause of action provided that a plaintiff could bring suit in the county in which the plaintiff resides or in Travis County. *See* Act of May 22, 1993, 73rd Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 610 (amended 1995) (current version at TEX. GOV'T CODE § 554.007) (Supp.2000). Zimlich sued in Travis County. The City timely filed a motion to transfer venue to Tarrant County, arguing that the cause of action accrued there, and the parties and witnesses resided there. The trial court denied the City's motion.

■■■ The venue provision in the Whistleblower Act is permissive. *See Wichita County v. Hart,* 917 S.W.2d 779, 783 (Tex.1996). If all applicable venue provisions are permissive, one does not dominate another, and the action is brought in a proper county, then the venue of the action will be sustained against a defendant's motion to transfer. *See* TEX.R.

CIV. P. 87(3)(c). The City points to no mandatory venue in the statute; thus, the trial court was correct to deny the City's motion.

■■■ The City argues that venue in Travis County was not proper because it is unconstitutional. First, the City argues that suit in Travis County, in the absence of some rational basis, is a violation of the City's constitutional rights under the due course of law provision because venue is inconvenient for the parties and witnesses. The City, however, derives its existence and powers from legislative enactments and is subject to legislative control. Consequently, the Legislature has the power to require the City to submit to inconvenient venue, and the City's due process challenge of this application of the venue statute fails. *See City of Trenton v. New Jersey,* 262 U.S. 182, 187, 43 S.Ct. 534, 67 L.Ed. 937 (1923) (rejecting a city's substantive due process challenge of a state action); *cf. Wilson v. Andrews,* 10 S.W.3d 663, 669 (Tex.1999) (recognizing that a city has standing to raise a due process challenge of the Civil Service Act). In its second constitutional challenge, the City argues that venue in Travis County violates separation of powers because it allows Travis County courts to review the administrative decisions of a far-removed local government. This challenge also fails because the Constitution only guarantees the separation of the state legislative, executive, and judicial branches of government. *See* TEX. CONST. art. II, § 1. Since the City's constitutional challenges fail, venue was proper in Travis County and the trial court properly denied the City's motion to transfer venue.

### D

The City also challenges the sufficiency of the pleadings. The City contends there were no pleadings to support the jury's finding that the City discriminated against Zimlich by assigning him security duty or failing to promote him. Zimlich's pleadings did not allege that the City discrimi-

nated against him by assigning him to security duty or failing to promote him; rather, they alleged that the City discriminated against him by suspending him and reprimanding him in retaliation for his report of Davis's conduct. During trial, the court allowed Zimlich's oral request for a trial amendment to include the claims that were ultimately in the charge. However, Zimlich did not submit a written pleading in support of those claims until after the trial was completed and the judgment was signed.

 A trial amendment must be filed as a written pleading; an oral statement at trial is insufficient to modify the pleadings. *See* TEX.R. CIV. P. 66, 67. However, a party waives its complaint of any defect, omission, or fault in the pleadings if the party fails to specifically object before the submission of the charge to the jury. *See* TEX.R. CIV. P. 274; TEX.R.APP. P. 33.1. Since the City did not object to the pleadings and did not otherwise bring any pleading deficiencies to the attention of the trial court, the City waived any error.

### E

 Finally, the City argues that Zimlich should be bound by statements he and his attorney made during trial. First, in closing argument Zimlich's attorney asked the jury to award Zimlich $240,000 in mental anguish damages, but the jury awarded $300,000. The City does not challenge the legal sufficiency of the evidence to support the amount of the award; rather, it contends that the damages awarded by the jury should be reduced by $60,000 based on Zimlich's attorney's statement. However, the jury was guided by the language of the charge and was free to weigh the evidence of mental anguish and assign it the weight reflected in the verdict. *See Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex.1996) ("Juries cannot simply pick a number and put it in the blank. They must find an amount that, in the standard language of the jury charge, 'would fairly

and reasonably compensate' for the loss."); *El Paso Healthcare Sys., Ltd. v. Piping Rock Corp.*, 939 S.W.2d 695, 700–01 (Tex. App.—El Paso 1997, writ denied). A jury may award more damages than requested by a party if there is evidence supporting the higher award of damages. *See El Paso Healthcare Sys.*, 939 S.W.2d at 700–01 (affirming a jury award of $440,000 where plaintiff testified that $351,000 would adequately compensate plaintiff, but other evidence showed $550,000 in actual losses). Thus, the jury here was free to ignore Zimlich's attorney's statement and award damages supported by the evidence. Since the City does not challenge the sufficiency of the evidence to support an award of $300,000, there is no basis to reduce that award.

The City also argues that Zimlich's lost future income damages should be limited because of statements by Zimlich and his attorney. We need not consider this argument, however, based on our earlier conclusion that Zimlich is not entitled to any future income damages.

The City also contends that Zimlich should be bound by his attorney's statement that Donoho was irrelevant to the case. The record reveals that Zimlich's attorney stated that Donoho was irrelevant with regard to a specific incident that occurred when Zimlich was a SWEEP officer. But the attorney emphasized that Donoho was relevant to other claims of discrimination. Clearly, Zimlich's attorney did not make an admission that Donoho was irrelevant to the entire case.

### III

### Conclusion

While the court of appeals generally considered the legal and factually sufficiency of the jury's finding of liability, the court of appeals erroneously failed to specifically consider whether there is legally and factually sufficient evidence that Zimlich's report of Davis's conduct caused the adverse employment decisions taken

against Zimlich. We conclude that there is legally sufficient evidence to support the jury's finding that the City is liable to Zimlich for assigning him to security duty because he reported illegal conduct. But since the court of appeals failed to consider whether the evidence of causation was factually sufficient, we remand to the court of appeals to consider that issue. We further conclude that there is no evidence supporting the jury's finding that the City delayed or denied Zimlich's promotions because of his report. Because an affirmative finding regarding the promotions is the sole basis to support the damages for lost past and future earnings, we reverse the $200 award for lost past earnings and the $300,000 award for lost future earnings. Finally, we conclude that there is no evidence that Donoho acted with malice; therefore, we reverse the award of punitive damages. Thus, for the reasons considered above, we reverse the judgment of the court of appeals in part, render judgment that Zimlich take nothing on his claims for lost past and future earnings, and remand Zimlich's claims for mental anguish to the court of appeals for further proceedings consistent with this opinion.