# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00508-CV

**Alexander Tan and Lan Ly Tan, Appellants**

**v.**

**Antonio Di Napoli and Maya Di Napoli, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
## NO. D-1-GN-09-004258, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants Alexander and Lan Ly Tan (collectively "the Tans") filed suit to cancel and rescind an executory contract for the purchase of a home owned by Antonio and Maya Di Napoli (collectively "the Di Napolis") and to receive damages under section 5.085 of the Texas Property Code based on the Di Napolis' failure to comply with statutory requirements for executory contracts on residential property encumbered by existing liens. Tex. Prop. Code Ann. §§ 5.062 (limiting applicability of subchapter to residential properties), .085 (West Supp. 2012) (prohibiting seller from executing executory contract for encumbered residential property unless statutory requirements are satisfied). The trial court determined that the Di Napolis violated section 5.085 as a matter of law and rendered judgment in the Tans' favor on a jury verdict awarding them $500,000 in damages. On appeal, the Tans challenge the legal and factual sufficiency of the evidence to support the jury's

damages findings, contending they were entitled to receive more than $1.9 million in statutory damages. We will affirm.

## BACKGROUND

In May 2007, the Tans and the Di Napolis entered into an executory contract in which the Tans agreed to purchase a luxury home from the Di Napolis for $3.2 million ("the contract for deed"). At that time, the home was subject to an existing purchase-money lien held by Washington Mutual Bank, FA with a principal balance of $1.625 million. The existence and terms of this note were known to the Tans long before they executed the contract for deed, and the note and principal balance were referenced in the contract for deed. In fact, as part of the consideration for purchasing the Di Napolis' home, the Tans agreed to make monthly principal and interest payments to Washington Mutual on the Di Napolis' behalf in satisfaction of the existing lien. With regard to the remaining portion of the purchase price, the Tans agreed to make several $240,000 lump-sum principal payments to the Di Napolis at six-month intervals over a 30-month period and quarterly interest payments. The Tans further agreed to pay $500,000 down in addition to a $30,000 escrow payment.

The deed of trust securing the Washington Mutual loan included a "due on sale" clause, which authorized the bank to accelerate the loan if the Di Napolis transferred any legal or beneficial interest in the property, including by contract for deed, without the bank's consent. All parties were aware of the existence and potential ramifications of the due-on-sale clause and were represented by counsel in the transaction. When the time came to close on the transaction, however, the Di Napolis had not obtained the bank's consent and the Tans had not applied to assume the note,

2

which was a condition precedent to obtaining the bank's consent. The closing date was delayed to address this issue and a dispute that had arisen between the Di Napolis and the neighborhood homeowners' association ("HOA") regarding an easement to be conveyed along with the residential property. The day before the scheduled closing, the HOA had filed a lis pendens notice against the property in an effort to compel the Di Napolis to replat the residential property and the adjoining easement property into a single tract.

Although these circumstances were known to all parties, they nonetheless desired to close the transaction without the matters having been resolved. In exchange for monetary considerations (including a $10,000 cash credit at closing) and amendments to the contract to address the lis pendens filing and the risk that the existing note could be accelerated, the Tans consummated the sale against the advice of their attorney. Following closing, the monthly payments on the Washington Mutual note were paid to the Di Napolis, rather than to the bank, in an apparent attempt to prevent the bank from learning about the transaction and accelerating the note.

Over the course of the two years that followed the closing, the Tans paid the interest and principal on the Washington Mutual note fairly consistently, but they were frequently delinquent on the periodic principal and interest payments on the balance owed to the Di Napolis. Because the Tans were significantly in default on their payments, the Di Napolis twice instituted eviction proceedings against them. Both suits were ultimately nonsuited pursuant to settlement agreements that provided for monetary payments by the Tans to the Di Napolis in addition to amendment of some of the terms of payment in the contract for deed.

After the second eviction proceeding was settled in the summer of 2009, the Tans attempted to secure third-party financing —with Mrs. Tan's father as the borrower—in order to meet their obligations under the contract for deed. The bank's appraisal of the home, however, was more than $1 million less than the Tans had agreed to pay for the house, leaving a shortfall between the amount the bank would lend and the amount the Tans still owed to the Di Napolis. The Tans asked the Di Napolis to finance the shortfall, but the parties could not reach an accord regarding the security the Tans would provide. Because the Tans remained unable to meet their financial obligations to purchase the property, the Di Napolis filed a third eviction proceeding in October 2009. By rule 11 agreement, the parties agreed that the Tans would vacate the premises on December 15, 2009, and the Di Napolis would nonsuit the eviction proceedings.

During the time the Tans occupied the property, the dispute with the HOA was satisfactorily resolved when the property was replatted after the Tans gave notice in June 2009 of an intent to cancel and rescind the contract for deed based on improper platting of the property. Both parties accused the other of having been an impediment to the efforts to replat, but there is no indication that this matter affected the parties' ability to perform under the contract for deed. There is also nothing in the record to suggest that Washington Mutual attempted or threatened to accelerate the loan or otherwise interfered with the parties' performance of the contract for deed.

The day after vacating the premises—more than 30 months after closing on the contract for deed—the Tans sued the Di Napolis asserting several causes of action, including an action to cancel and rescind the contract for deed based on the Di Napolis' failure to comply with section 5.085 of the Texas Property Code, which (1) prohibits sellers from executing an executory

4

contract on encumbered residential property unless certain statutory requirements are met, (2) entitles the purchaser to cancel and rescind the contract, and (3) entitles the purchaser to recover from the seller "all payments of any kind made to the seller under the contract," "any payments the purchaser made to a taxing authority for the property," and "the value of any improvements made to the property by the purchaser." *Id.* § 5.085(a), (b), (c); *see also id.* § 5.062(a). The statutory requirements at issue in this case are that (1) the lender does not prohibit the transaction and consents to provide certain information to the purchaser about the loan upon request and to accept payments directly from the purchaser if the seller defaults; (2) the seller provides a separate, written disclosure to the purchaser at least three days before the contract is executed that includes specified information about the loan and a conspicuous notice about the possibility of foreclosure upon the seller's default; and (3) the executory contract includes covenants regarding payment of the existing lien, notice of default, and the purchaser's right to cure defaults. *Id.* § 5.085(b)(3)(A)–(D). The statute further provides that noncompliance with the foregoing requirements is actionable as "a false, misleading, or deceptive act or practice" under the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. § 17.46 (West 2011). *Id.* § 5.085(c)(1).

It is undisputed that the contract for deed here, which was drafted by the Tans' attorney, did not include the required seller covenants. It is likewise undisputed that the Di Napolis did not secure Washington Mutual's consent as required under the deed of trust and failed to provide the Tans with the statutory disclosures in the manner specified by section 5.085. Accordingly, the trial court instructed the jury that the Di Napolis violated section 5.085 as a matter of law. The Tans' damages were then determined by the jury pursuant to the following special-issue question:

5

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate the Tans, for their damages, if any, that resulted from the Di Napolis' failure to comply with the Texas Property Code?

Consider the following elements of damages, if any, and none other.

Do not add any amount for interest on damages, if any.

Do not include in your answer any amount that you find the Tans could have avoided by the exercise of reasonable care.

Answer separately in dollars and cents for damages, if any.

(a) The amount of all payments of any kind made to the Di Napolis under the Contract for Deed.

Answer $_____

(b) The amount of any payments the Tans made to a taxing authority for the Property.

Answer $_____

(c) The value of any improvements made to the Property by the Tans.

Answer $_____

The Tans claimed they were entitled to $1,634,961.77 for amounts paid to or on behalf of the Di Napolis under the contract for deed. This figure included downpayment money, the escrow fee, closing costs, principal and interest on the Washington Mutual note, HOA fees and late fees, casualty and personal property insurance premiums and late fees, various legal fees, taxes paid on other property the Di Napolis owned, principal and interest payments on the amount owed to the Di Napolis, sums paid pursuant to the settlement agreements, and moving expenses. The Tans

6

claimed that they were entitled to be reimbursed $32,898.63 for tax payments, including interest and penalties for late payments. Finally, the Tans claimed $317,592.51 as the "value" of improvements such as regular maintenance items, carpet and paint upgrades, cabinetry, and the cost of custom furniture, blinds, and drapes that were removed from the property by the Tans. After a seven-day trial, the jury awarded the Tans $500,000 for payments under the contract and zero damages for the other two categories. The jury determined all of the Tans' other claims for affirmative relief adversely to them.

The trial court rendered judgment on the jury's verdict, denying the Tans' motion for judgment notwithstanding the verdict. The Tans' subsequent motion for new trial was overruled by operation of law. On appeal, the Tans challenge the amount of damages awarded on their section 5.085 claim, but they do not challenge the disposition of their other claims. The Di Napolis have not appealed the adverse liability ruling on the section 5.085 claim or the trial court's directed verdict on their counterclaims against the Tans.

**DISCUSSION**

In two points of error, the Tans challenge the legal and factual sufficiency of the evidence to support the jury's award of damages. The Tans contend that they conclusively established that they were entitled to recover more than $1.9 million under section 5.085. Alternatively, the Tans contend that the jury's damage award is against the great weight and preponderance of the evidence, especially since the jury failed to award any damages for taxes and the value of improvements.

7

When, as here, a party attacks the legal sufficiency of the evidence supporting an adverse finding on an issue on which he had the burden of proof, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Corp. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)). The reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Dow Chem. Corp.*, 46 S.W.3d at 241. If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Dow Chem. Corp.*, 46 S.W.3d at 241. We will sustain such a legal-sufficiency challenge only if the contrary proposition was conclusively established. *Id.*

In a factual-sufficiency review, we consider and weigh all the evidence, both supporting and contradicting the finding. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998). A party attacking the factual sufficiency of the evidence supporting an adverse finding on which he had the burden of proof must demonstrate that the jury's answer is against the great weight and preponderance of the evidence. *Dow Chem. Corp.*, 46 S.W.3d at 242. We set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). We may not substitute our judgment for that of the trier of fact or pass on the credibility of the witnesses. *See Maritime Overseas Corp.*, 971 S.W.2d at 407. When presented with conflicting evidence, the trier of fact may

8

believe one witness and disbelieve others and may resolve inconsistencies in the testimony of any witness. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

As an initial matter, we address the Tans' contention that they conclusively established the amount of damages because neither the amounts of their payments nor their documentary evidence in support of their damages was contested. While neither the Di Napolis nor their expert witness disputed the actual sums the Tans paid, the Di Napolis did dispute whether the amounts the Tans claimed were within the scope of the remedies specified in section 5.085. With regard to the amounts the Tans claimed to have paid "under the contract," there was a fact issue about what sums were actually paid "under the contract" as opposed to under the settlement agreements or extrinsic to any contract. For example, the Di Napolis assert that some of the Tans' claimed damages were payments made to settle the eviction suits. In addition, the Tans sought categories of damages that a fact finder could have concluded were not paid pursuant to the contract for deed, such as moving expenses, casualty and personal property insurance premiums, late fees, taxes paid on other property the Di Napolis own, and various legal fees. With regard to tax payments for the property, the Tans sought to recover not only the amount of the taxes but also interest and penalties incurred due to their failure to timely pay the taxes. Finally, the "value of improvements" to the property was heavily disputed. The Tans assume that the value of improvements to the property is equivalent to the costs they spent on the property for maintenance, repairs, custom furniture, and various upgrades. However, the plain language of section 5.085 "measures the amount of recovery by the 'value' rather than the 'cost' of such improvements." *Morton v. Hung Nguyen*, 369 S.W.3d 659, 674 (Tex. App.—Houston [14th Dist.] 2012, pet. filed); *see* Tex. Prop. Code Ann.

9

§ 5.085(c)(2)(B)(ii). A genuine issue of material fact existed as to whether any value was added to the property by virtue of the improvements and, if so, to what extent. In addition, the Tans' expert's report indicates that not all damages were supported by documentary evidence, and therefore, the jury would have to rely on the Tans' testimony to substantiate their claims. Credibility of witnesses is quintessentially a matter for the jury. Thus, contrary to the Tans' assertion, the foregoing fact issues warranted submission of the damages issue to the jury.

When an issue of material fact is submitted to the jury, the sufficiency of the evidence is measured by the questions and instructions in the charge. *See Regal Fin. Co. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 601 (Tex. 2010) (noting that evidentiary sufficiency must be measured against jury charge); *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 (Tex. 2005); *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex. 2000) (observing that court bound to review evidence in light of instruction submitted to jury without objection); *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (stating that when submitted without objection, court's charge, not some other unidentified law, measures sufficiency of evidence); *see also Secure Comm, Inc. v. Anderson*, 31 S.W.3d 428, 430-31 (Tex. App.—Austin 2000, no pet.) (holding that appellant waives right to complain of ruling to which no error was assigned). In this case, the jury was asked to award "fair and reasonable" compensation to the Tans that "resulted from" the Di Napolis' failure to comply with the Texas Property Code. They were also instructed not to include any amounts that "the Tans could have avoided by the exercise of reasonable care."

When considering the evidence in light of the legal-sufficiency standard articulated above and the jury charge, we conclude that there is some evidence to support the jury's damages

findings and that the Tans did not conclusively establish their entitlement to more than $1.9 million in damages. First, there is evidence from which the jury could have concluded that little, if any, of the Tans' damages "resulted from" the Di Napolis' failure to comply with section 5.085 or that the Tans could have mitigated their damages to a significant degree. There is no evidence that Washington Mutual took any adverse action on the existing note or that the Di Napolis' failure to comply with section 5.085 impeded or prevented the Tans from meeting their obligations under the contract. Conversely, there is considerable evidence that the damages the Tans sustained resulted directly from their inability or unwillingness to meet their financial obligations under the contract for deed and settlement agreements. The jury might also have reasonably concluded that it would not be "fair and reasonable" to allow the Tans to recoup everything they paid after living in the home for 30 months and inducing the Di Napolis to nonsuit the eviction proceedings in reliance on the Tans' settlement agreements and further promises to pay. Indeed, the jury might reasonably have concluded that the Tans could have mitigated their damages by vacating the premises when they were unable to pay their mortgage rather than negotiating to extend their stay in the home and incur additional damages. It is also reasonable for the jury to have determined that at least some of the damages the Tans claimed did not fall within the statutory remedies, including settlement payments, moving expenses, legal fees, penalties, and custom furniture. Because there is some evidence to support the jury's failure to award the Tans all the relief they sought, the Tans did not conclusively establish that they were entitled to recover the $1.9 million in damages to which they say they are entitled. *See Dow Chem. Corp.*, 46 S.W.3d at 241-42.

11

In their second issue, the Tans contend that the jury's damages award is against the great weight and preponderance of the evidence because the amount awarded is so low in comparison with the amount they proved they expended. They further contend that the jury was required to award something with regard to taxes paid and value of improvements because there is some evidence of both. It is true that the Tans expended a great deal of money on this property and that the jury's award is meager in comparison, but we cannot say that the evidence of the amounts the Tans paid greatly preponderates against the jury's verdict when compared to considerable evidence supporting the jury's verdict with regard to what damages are "fair and reasonable," "resulted from" the Di Napolis' failure to comply with section 5.085, and could have been avoided by the Tans with reasonable care. *See Regal Fin. Co.*, 355 S.W.3d at 601 (evidentiary sufficiency must be measured against jury charge).

With regard to the value of improvements in particular, there was no evidence that the value of the property increased after the Tans expended the sums they claimed for improvements. There was considerable disputed evidence regarding the value of the property at the time the Tans purchased it in 2007 and shortly before the Tans vacated the premises in 2009. At best, the evidence shows that the property was valued about the same both before and after the Tans "improved" it. At worst, the evidence showed that the property was worth about $1 million less. In addition, the jury could reasonably have determined that many of the expenses sought to be recovered did not qualify as improvements or add any value to the home—such as repairs, regular maintenance items, and the thousands of dollars spent on custom furniture—or that the Tans could have avoided those losses had they paid what they owed on their mortgage rather than incurring considerable expenses

12

for custom furniture, new carpeting, and paint. In addition, there was evidence that the Tans removed the custom furniture, drapes, and blinds from the property, such that those items could not have added any value to the home. Finally, Antonio Di Napoli testified that additional repairs had to be made after the Tans vacated the premises in order to make the home marketable for sale. "By its plain language, the purchaser's right to receive the 'value of improvements' under section 5.085 is designed to compensate the purchaser for value that is added by the purchaser to the property, regardless of the reason, and that is retained by the seller after the purchaser properly cancels and rescinds the contract for deed." *Morton*, 369 S.W.3d at 674. In this case, the jury could reasonably have concluded that the property did not increase in value due to the expenditures for which the Tans seek reimbursement, and there is very little contrary evidence, let alone so much evidence as to render the jury's verdict clearly wrong and unjust. *See Pool*, 715 S.W.2d at 635.

In summary, we conclude that the evidence was legally and factually sufficient to support the jury's award of $500,000 in damages to the Tans for payments made to the Di Napolis under the contract and zero damages for tax payments and the value of improvements. We therefore overrule appellate issues one and two.

## CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

13

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed:   October 19, 2012