

# NUMBER 13-23-00395-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DONNA INDEPENDENT
SCHOOL DISTRICT,                                                          Appellant,

v.

DIANA QUINTANILLA,                                                        Appellee.

## ON APPEAL FROM THE 93RD DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Longoria, Silva, and Peña[1]**
**Memorandum Opinion by Justice Peña**

[1] The Honorable Nora L. Longoria, former Justice of this Court, did not participate in this decision because her term of office expired on December 31, 2024.

Appellant Donna Independent School District (Donna ISD or district) brings this interlocutory appeal from the trial court's order denying its motion for summary judgment, which sought to dismiss appellee Diana Quintanilla's whistleblower suit. *See* TEX. GOV'T CODE ANN. § 554.001–.010. In three issues, which we construe as one, Donna ISD argues that the trial court erred in denying its motion because Quintanilla cannot establish a waiver of its sovereign immunity. We reverse and render.

## I. BACKGROUND[2]

Donna ISD hired Quintanilla in 2007 as an accountant, and in June 2014, she was named the director of the child nutrition department. In September 2016, Quintanilla notified her supervisor Velma Rangel that money was missing from the department's accounts. Quintanilla believed Donna ISD's chief financial officer Maricela Valdez used the missing funds to cover other district expenses. Quintanilla later contacted superintendent Fernando Castillo, who recommended that she consult with the finance director of the Region One Education Service Center, Francisco Guzman. In November 2016, Guzman met with Quintanilla, Rangel, Valdez, and Castillo. During the meeting Valdez acknowledged the missing funds, but the matter remained unresolved.

In December 2016, after noticing further accounting discrepancies, Quintanilla contacted the Texas State Teachers Association for guidance. Quintanilla was advised to contact the district's police department to report the missing money. On December 22, 2016, Quintanilla filed a report with the Donna ISD police department stating, in relevant part, as follows:

> This memo is in regards to a formal complaint I am filing against [Valdez.] I file this complaint to make it known that I am not involved in the misuse of

---

[2] The background facts are derived from the summary judgment record.

Child Nutrition Funds nor do I support their actions. As I describe more in detail below, they were taken for uses "other than for reasonable and allowable expenses to be used in the success of the Child Nutrition Program." As of Friday, the total amount actually taken out of the Child Nutrition Fund balance stands at an estimated $3,162,477.21.

Donna ISD suspended Valdez on January 20, 2017. The district notified Valdez that "[a]n investigation involving possible violations regarding Child Nutrition Department funds is being initiated as a result of the complaint filed by [Quintanilla]." In October 2017, Donna ISD terminated Valdez's employment.

Valdez was elected to the Donna ISD board of trustees in November 2018. On June 18, 2020, Donna ISD's then-superintendent, Hafedh Azaiez, issued a formal reprimand to Quintanilla stating that the district had investigated and substantiated allegations that Quintanilla engaged in unprofessional behavior. The reprimand noted that Quintanilla had: argued loudly with subordinates establishing a tense work environment; arrived at work late on a consistent basis and allowed subordinates to do the same; and frequently used profanity in front of employees, while allowing employees to do the same. Nevertheless, Donna ISD renewed Quintanilla's one-year employment contract on that same date.

In August 2020, Valdez became the president of the district's board of trustees. Shortly thereafter, Quintanilla was told that the superintendent and chief financial officer were visiting cafeteria managers and inquiring whether they had any complaints concerning Quintanilla.[3]

---

[3] Quintanilla testified that she was told by cafeteria managers, "Now, that [Valdez] is president, she's going to get you out." Donna ISD did not object to this double hearsay. As to the evidentiary value of this testimony, we note that Quintanilla did not explain whether the unnamed declarants suspected this to be the case or whether they heard the information second hand. At any rate, there is no evidence that Valdez made any statement that she wanted Valdez removed from her position.

3

On September 28, 2020, Donna ISD placed Quintanilla on administrative leave while an investigation took place regarding allegations of misconduct. In October 2020, Quintanilla's attorney received documentation from the district indicating that the investigation was initiated by a report written by Valdez's nephew, Emilio Cisneros. On June 16, 2021, the district informed Quintanilla that her contract would not be renewed for the following school year. Quintanilla's employment ended on June 28, 2021.

On July 25, 2021, Quintanilla filed a grievance with the district regarding the non-renewal of her contract. The grievance proceeded to level three, and the board of trustees denied her grievance after meeting on February 8, 2022.

On March 8, 2022, Quintanilla filed the present action asserting a whistleblower claim. Quintanilla alleged that after Valdez was elected to the board of trustees, Quintanilla suffered harassment from the superintendent. Quintanilla claimed she was placed on administrative leave in September 2020 and wrongfully terminated in retaliation for her prior reporting of the misappropriation of district funds. Quintanilla requested injunctive relief, damages, attorney's fees, and reinstatement to her position.

Donna ISD filed a traditional and no-evidence motion for summary judgment, arguing that Quintanilla could not establish a waiver of the district's sovereign immunity for violating the Whistleblower Act because: (1) Quintanilla was not terminated as she alleged, but the term of her employment expired; (2) Quintanilla did not timely file her whistleblower suit regarding being placed on administrative leave with pay on September 28, 2020; and (3) assuming Quintanilla was complaining of the non-renewal of her contract, Quintanilla could not establish causation for her claim because her report of a violation of the law occurred over four years prior. Donna ISD supported its motion with

the following evidence: (1) Quintanilla's report to law enforcement; (2) notice to Valdez regarding being placed on administrative leave; (3) Quintanilla's reprimand; (4) Quintanilla's one-year contract; (5) notice to Quintanilla that she was being placed on administrative leave; (6) notice to Quintanilla that her contract was ending; (7) Quintanilla's deposition testimony; and (8) the affidavit of Adela Trocoso, Donna ISD's assistant superintendent for human resources.

Quintanilla filed a response to Donna ISD's motion for summary judgment arguing: (1) Quintanilla is complaining that her contract was not renewed as retaliation for her reporting Valdez and she should be afforded the opportunity to amend her petition in that regard if necessary; (2) she timely filed her lawsuit because the date of the adverse employment action is June 16, 2021, and she timely filed her suit after her grievance was heard; and (3) she has shown causation for her claim because she suffered an adverse employment action after Valdez was elected to the board of trustees and ultimately named the board's president. Quintanilla supported her response with the following evidence: (1) her deposition testimony; (2) her report to law enforcement; (3) Quintanilla's reprimand; (4) Quintanilla's grievance documentation; and (5) notice of contract nonrenewal.

Donna ISD filed a reply reemphasizing that Quintanilla could not show causation for her claim because the non-renewal of her contract occurred four and a half years after her report to law enforcement. The trial court ruled on Donna ISD's motion for summary judgment by submission and signed an order denying the motion. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8); *Thomas v. Long*, 207 S.W.3d 334, 338 (Tex. 2006).

## II. STANDARD OF REVIEW

A summary judgment motion may be brought on traditional or no-evidence grounds. *See* TEX. R. CIV. P. 166a. A movant for traditional summary judgment has the burden to establish that no genuine issue of a material fact exists and that it is entitled to judgment as a matter of law. *Id.* R. 166a(c); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). A movant for no-evidence summary judgment alleges that, after adequate time for discovery, there is no evidence of one or more essential elements of a claim or defense on which the other party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). If a proper no-evidence summary judgment motion is filed, the nonmovant has the burden to produce evidence of the specified elements. *See id.*

Under either summary judgment standard, if the nonmovant produces more than a scintilla of evidence to raise a fact issue on the challenged elements, then summary judgment is improper. *Amedisys, Inc.*, 437 S.W.3d at 511; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms. Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010). We review summary judgments de novo. *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 790 (Tex. 2019). "[I]n evaluating the parties' evidence, we take as true all evidence favorable to the nonmovant and indulge every reasonable

inference and resolve any doubts in the nonmovant's favor." *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528–29 (Tex. 2022).

Unless the state consents to suit, sovereign immunity deprives a trial court of subject-matter jurisdiction over lawsuits in which the state or certain governmental units have been sued. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012). "Immunity from suit may be asserted through a plea to the jurisdiction or other procedural vehicle, such as a motion for summary judgment." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). Whether a court has subject-matter jurisdiction is a question of law. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Although immunity from suit is a jurisdictional question generally distinct from immunity from liability, the two are interwoven in the context of the Whistleblower Act, which requires plaintiffs to allege jurisdictional facts giving rise to an actual violation of the Act to qualify for the statutory waiver of immunity. *State v. Lueck*, 290 S.W.3d 876, 881 (Tex. 2009); *see* TEX. GOV'T CODE ANN. §§ 554.003(a) (authorizing suit by public employee terminated in violation of Act), .0035 (waiving immunity "to the extent of liability for the relief allowed under this chapter for a violation of this chapter").

When a party has filed a summary judgment motion raising jurisdictional issues that challenge the pleadings, a reviewing court must construe the pleadings liberally in favor of the pleader and look to the pleader's intent. *See Miranda*, 133 S.W.3d at 226; *Lazarides v. Farris*, 367 S.W.3d 788, 797 (Tex. App.—Houston [14th Dist.] 2012, no pet.). If the facts alleged affirmatively demonstrate the trial court's jurisdiction to hear the cause, the trial court should reject the jurisdictional challenge. *See Miranda*, 133 S.W.3d at 226. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's

jurisdiction, but do not affirmatively demonstrate incurable defects in the jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Id.* at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, then summary judgment may be granted on the jurisdictional challenge without allowing an opportunity to amend. *Id.* at 227.

"The Whistleblower Act prohibits a government employer from taking an adverse personnel action against a public employee who in good faith reports a violation of law to an appropriate law-enforcement authority." *Office of Attorney Gen. v. Rodriguez*, 605 S.W.3d 183, 192 (Tex. 2020); *see* TEX. GOV'T CODE ANN. § 554.002(a). The employee need not establish that her report was the sole or substantial reason for the employer's adverse action. *Rodriguez*, 605 S.W.3d at 192. Instead, she must present some evidence that "but for" her report, the adverse employment action would not have occurred when it did. *Id.* ("An adverse employment action 'based solely' on reasons unrelated to a good-faith report of a legal violation destroys the causal link."); *see also City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 68 (Tex. 2000).

### III.    DISCUSSION

Donna ISD argues that the trial court erred in denying its motion for summary judgment because: (1) Quintanilla's live pleading asserts that she suffered an adverse employment action by being placed on administrative leave on September 28, 2020, as opposed to complaining of the non-renewal of her contract, rendering her suit untimely; (2) Quintanilla cannot establish her allegation that she was terminated because the evidence establishes that her contract was non-renewed; and (3) even assuming that Quintanilla is complaining of the non-renewal of her contract, Quintanilla cannot establish

a causal connection between her report of illegal conduct and any adverse employment action.

Quintanilla responds that she is complaining of the non-renewal of her contract, and any pleading deficiency in that regard can be cured by amendment. She notes that her suit was timely filed following the exhaustion of the district's internal grievance procedure. She further maintains that the evidence establishes a causal connection between her report of a violation of the law and the non-renewal of her employment contract. Assuming, without deciding, that Quintanilla's pleadings can be liberally construed to complain of the non-renewal of her contract and that her action was timely filed, we agree with Donna ISD that Quintanilla has presented no evidence of a causal connection between her report of a violation of the law and the non-renewal of her contract.

The Whistleblower Act permits a rebuttable presumption of a causal connection if the employee is terminated not later than ninety days after the reported violation of law. *See* TEX. GOV'T CODE ANN. § 554.004(a). Where the presumption does not apply, as here, an employee must present some evidence to establish a causal connection. *Zimlich*, 29 S.W.3d at 70. Circumstantial evidence that may establish causation includes: (1) the decision-maker's knowledge of the report of illegal conduct; (2) the expression of a negative attitude toward the employee's report; (3) a failure to adhere to policies regarding employment decisions; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the adverse employment action was false. *See id.* at 69. "If an employee who reports illegal conduct can recover without evidence of causation, it would effectively give the employee life tenure[.]" *Id.* at 68.

9

Here, there is no presumption of causation due to the passage of over four years between Quintanilla's report and the non-renewal of her contract. Therefore, we must examine if there is other evidence establishing causation. Of the types of circumstantial evidence recognized in *Zimlich*, only one is present—Valdez, a Donna ISD board of trustee member, certainly had knowledge that Quintanilla reported her. Although there was evidence that Quintanilla was investigated following Valdez's ascension to the board of trustees, there was no evidence that those investigations occurred at Valdez's direction. At any rate, "evidence that an adverse employment action was preceded by a superior's negative attitude toward an employee's report of illegal conduct is not enough, standing alone, to show a causal connection between the two events. There must be more." *Id.* at 69. More importantly, Valdez is one of seven board members.

> In determining causation, we focus on those with authority in the decision-making process that resulted in the adverse employment action and whether there is evidence "that the decisionmaker or decision-makers" acted with a retaliatory motive. Evidence of one decisionmaker's improper motive, however, cannot be imputed to all of the decisionmakers—or to the final decision—without evidence that the improper motive influenced the final decision.

*Rodriguez*, 605 S.W.3d at 193 (cleaned up). There is no evidence here that the other six board members had knowledge of Quintanilla's report or that they acted with retaliatory motive*. See id.* at 196 ("Evidence must show that the retaliatory motive was shared by the necessary final decisionmakers and reflected in the final decision."); *Zimlich*, 29 S.W.3d at 70 (finding no evidence "that the decision-maker or decision-makers" acted with a retaliatory motive even when supervisor with improper motive served on promotions board); *see also Houston Cmty. Coll. v. Lewis*, No. 01-19-00626-CV, 2021 WL 2654141, at *16 (Tex. App.—Houston [1st Dist.] June 29, 2021, no pet.) (mem. op.)

("And even if there were evidence of [a] 'negative attitude' harbored by Dr. Porcarello, there is no evidence that such negative attitude influenced Dr. Bagherpour or Morris, both of whom recommended Dr. Lewis' termination to Anderson, who in turn, recommended Dr. Lewis' termination to Dr. Maldonado. This is fatal to Dr. Lewis' claim.").

Although we find it compelling that Valdez, who was terminated as result of Quintanilla's report and was later a board of trustee member at the time of Quintanilla's adverse employment action, this alone is not evidence of a causal connection absent evidence that a retaliatory motive was shared by all decision makers. Because Quintanilla did not present evidence that the non-renewal of her contract was causally connected to her prior report to law enforcement, her whistleblower claim fails as a matter of law. Accordingly, we conclude that the trial court erred in denying Donna ISD's motion for summary judgment. We sustain Donna ISD's issue.

## IV. CONCLUSION

We reverse the trial court's judgment and render judgment dismissing Quintanilla's claim.

L. ARON PEÑA JR.
Justice

Delivered and filed on the
14th day of February, 2025.